The Chief Justice

delivered the Opinion of the Court.
The City of Louisville, intending to extend a street through the land of J. I. Jacob, to which he objected, procured a writ of ad quod damnum, which directed an inquisition as to the damage he would sustain by the extension of the street, after deducting the estimated value of advantage which would accrue to him from the proposed extension. Upon the inquisition, he proved that so much of his ground as would be covered by the street when extended, was worth about three thousand dollars; but nevertheless, the jury assessed in damages only twenty eight dollars, after deducting the value of advantages, according to their estimate of them. Jacob, having failed in a motion to quash the inquisition, now urges a reversal of the order of the City Judge, for opening the street through his grounds, upon the payment to him of the twenty eight dollars as assessed.
This Court decided in the case of Sutton’s Heirs vs The City of Louisville, (5 Dana, 28,) and in that of Rice vs The Nicholasville, Danville and Lancaster Turnpike Company, (7 Ib. 81,) that the constitutional guarantee of a just compensation to every person whose property shall be appropriated to public use without his consent, entitles the owner of property, so appropriated, to the money value thereof, at least, and we are not only, not inclined to disturb the doctrine thus settled, but are still perfectly satisfied that it recognizes the true and only effectual exposition of the constitution.
A just compensation for property applied to public use, clearly implies, as we think, the value of the property in money. If the owner derive any incidental advantage or benefit from the manner in which it is applied to public use, others participate in some degree, and per *115 haps equally, in the same or similar advantages resulting to them also, and it would be unjust to exact from the one an equivalent for his incidental benefits, whilst the others enjoy theirs without the like exactions. Besides, if the owner of property can, in any case, be compelled to surrender it to the public use, without receiving the value of it in money, the constitutional guarantee would be ineffectual and delusive in many, and probably most cases; because the tribunal which decides on the retribution to which he may be entitled, is a portion of the public to whose use the property is applied, and may decide that the public appropriation of it will be beneficial to the owner, when, in his own judgment, or in fact, it will be injurious to him. And if he bo required to accept, in lieu of his property taken from him without his consent, any other thing than money, he may, in fact, receive less than an equivalent, or even nothing whatever of any actual value to him; because the value of every thing, except money, depends on opinion and accident. And if, as in this case, the compensation be offered in mere speculative advantage, which may exist only in the opinion or imagination of an interested jury, he may receive nothing of value to himself, or in his own opinion.
In this very case, the jury may have estimated the value to Jacob, of the extension of the street through his land, at about three thousand dollars, under the belief that such extension would enhance to that extent, the public estimate of the land, and facilitate its improvement and sale; and, at the same time, Jacob may not desire, but even have reason to regret, any such factitious augmentation in estimated value, and the extension of the street may operate as an annoyance to him, and frustrate some cherished enjoyment of the land by himself, so as to be actually and grievously prejudicial to him. And, as to his own lawful use and enjoyment of his own estate, he is the only constitutional or rightful judge.
Moreover, if the public can pay for private property taken for public use, by setting off against its value the ideal value attached by a portion of the same public, to prospective advantages expected to arise to the owner from the use to be made of his property: then the amount *116 of compensation, or whether there shall be any at all, will, in every case, depend on no fixed principle or certain criterion, but will often depend on the sovereign will, or on popular prejudice, caprice, or mere imagination.
To secure the citizen against any such despotism, was the object of the conservative provision in our State Constitution, which declares that private property shall not be taken for public use, without a just compensation, unless the owner consent.
If the local public of Louisville desire the use of Jacob’s land, that public should pay him, in money, the real value of the ground, before he be required to surrender it. He does not desire that such use be made of it, and is unwilling to give it to the city, and cannot be compelled to do so. It is enough that it may, nevertheless, be taken from him, upon the payment of its value. When the street shall be extended, he, as well as every other citizen, will be entitled to enjoy, without charge, its incidental advantages, unless he should claim damages for incidental disadvantages; and then the value of advantages might be set off against that of disadvantages, resulting from the same public act; because, if the extension of the street be productive of benefits to him, to that extent he is compensated for correspondent disadvantages, and would in fact sustain no damage.
But when the city, in the exercise of the qualified right of eminent domain, delegated to it by the Legislature, applies Jacob’s land to its own use without his consent, it incurs a debt under the paramount law, and which cannot, in our judgment, be constitutionally discharged, without his consent, by a tender of any other thing than money, or by less than the full money value of his land. In paying the value of his land, he will be required to make his individual contribution as a citizen of Louisville, and the amount of that contribution may be augmented by the enhanced value of his ground arising from the extension of the street. This is the utmost that should be exacted from him, for opening a street for the public use and benefit.
*117 We are, therefore, of the opinion, that the City Judge ought to have quashed the inquisition, and erred in his judgment; which is therefore reversed, and the cause remanded.