OaeutheRS, J.,
delivered the opinion of the court.
The defendants located their road for about five hundred feet, on a six acre lot of plaintiff, in.the vicinity of Nashville. The road runs through the corner of the lot, separating about three-fourths of an acre from the main lot, and occupying in the bed, which is from seven to ten feet deep, about three-foiirths of an acre. The plaintiff has his family residence on the lot, and it is handsomely and tastefully improved. The part separated, has upon it, some negro houses, p, cow house, well and spring house. Tie. plaintiff applied to the circuit court of Davidson county, under the act of 1845, ch. 1, chartering- said company, for the appointment of commission *428 ers to assess tbe damages sustained by him, in consequence of the location of said road upon bis land. This was at May Term, 1850, -when five commissioners were appointed. At October Term, 1850, the report made by said commissioners, was quashed for informalities in their proceedings, and five other men appointed. A majority of these commissioners, “ assess the loss and damage at two thousand dollars; ” and that the “ benefit and advantage the said Woodfolk has received from said road, consisting of the increased value of his said premises, amounts to the sum of two thousand five hundred dollars, at least.” So, they allow him nothing. From this report, he appealed to the court, and the cause was tried by a special jury, before the court, at January Term, 1852. A verdict was rendered in favor of the plaintiff against the defendant, for seven hundred and fifty dollars. The defendant moved for a new trial, which was overruled, and appieal in error to this court.
The bill of exceptions contains the evidence on which the verdict was found. It consists of the survey and description of the lot; the tract of the road through it, and the opinion of witnesses, as to the injury done to the plaintiff, on the one hand, and the enhancement of the value of his property, on the other.
The injuries enumerated, are of this character: cutting off the plaintiff from his well, spring-house, &c.; the necessity of moving out-buildings; erecting a stone wall in the cut made for the road, to keep up the ground, and prevent accidents; detracting from the beauty and comfort of the lot, as a family residence, &c.
Against all this, on the other hand, it is proved, that his lot is enhanced in value, in the market, by the erection of the road, from twenty-five to fifty per cent. *429 On all these points, tbe proof is, as it must be, when consisting of the opinions of men on any subject, very conflicting, and unsatisfactory, on all the items of account, on both sides. It must necessarily, partake more of the nature of guessing, than of certainty.
The law was laid down by the circuit judge in his charge, in part, and so far as it is necessary in our examination, as follows: “ You will recur to the testimony, and ascertain from that the value of the land taken for the road, and take into consideration such other inconveniences and damages, as shall have resulted to the plaintiff from the acts of defendant. You will estimate what damages the plaintiff may have suffered, if you shall think that any have accrued; then you will look to the testimony in the cause, and ascertain .whether the acts of the defendant,' in locating the road upon the land of the plaintiff, have resulted in benefit, or advantage, to him. On ascertaining this, you will determine whether the lands of the plaintiff have appreciated in value. You will not look to the fact, that this road is a public benefit or advantage, unless that public benefit or advantage be inseparable from the benefit conferred upon the plaintiff. If any advantages have resulted, you will determine what they are, and assess their value. You will then take the amount of benefit or advantage from the amount of damages, and the remainder, if any, will make your verdict. In ascertaining the benefits and damages, you will confine yourselves to the time when the defendants appropriated the land of the plaintiff to the use and construction of the road.”
Thus is the law laid down by the circuit court, and both parties are dissatisfied with it. The defendant brings *430 up tlie case by appeal, and tbe plaintiff by writ of error. It now devolves upon tbis court, to settle the law, and indicate the proper rules for this and all other cases of the kind; and there will doubtless be many in future, as the spirit of public improvement has now taken possession of the minds of the people, and guides the public counsels of our State. They should be such as will guard the rights of the citizens on one hand, and not improperly impede the cause of public improvement on the other. A wide range has been taken in the argument, evincing learning, research and ability, on the part of the counsel, worthy of the importance of the subject, as well as profitable to the court. "We feel much indebted to this full and able examination, and presentation of the questions involved, both upon principle and authority, for the opinion wo have been able to form on this most vexed and perplexing subject. We have had the advantage of all the lights that could be brought to the elucidation of the questions involved, by the best legal talents, and most profound research.
It would, at this day, be worse than useless, to enter into a discussion of the existence and extent of the right of eminent domain, and to prove that it is inherent in this, and all other governments. That is now well settled, and admitted on all hands, to exist in every State and country. No one now questions the right of the State to take private property for public use, against the consent of the owner. Questions frequently arise, and may come up again, as to the extent and right exercise of this conceded power. But it is not controverted, that it applies to the case of public roads, and that rail roads, whether constructed by the State, or chartered companies, are of that character. The land of *431 tbe plaintiff bas been taken for tbis purpose, and was therefore, legally and rightfully taken. But be has a corresponding right, which is as clear, well guarded, and indisputable, as the other; a claim for the value of his property. The State may take his property for the public use, but the State must see that the public pays him for it. The people, in whom the sovereign power properly resides in this free country, were not willing to leave this dangerous, though essential right of eminent domain, (a power to deprive a man of his property, against his consent,) unguarded by barriers of a permanent nature, inserted, in their constitution, restrictions upon it. They impliedly delegate the right, but protect the citizen, and secure to him the value of his private property. The provision for this purpose, in the federal constitution, is : “ Nor shall primate property be taltm for public use, without just compensation.” Amendments, Article Y.
. But this, as well as other provisions of the same character, are intended solely as limitations on the exercise of power by the general government, and is not applicable to the legislation of the States. The State constitutions are framed by different persons, and have distinct objects in view. The State governments are not restricted by the limitation of a power, expressed in general terms in the constitution of the United States. The States must be included in terms, or necessary implication in such limitation or negation of powers, or they are not affected; Barrow vs. The Mayor of Baltimore, 7 Peters, 243; 2 J. J., Mar. 45.
The constitution of the United States, cannot, therefore) be looked to for the rule to govern us in this case. But the people of this State, and perhaps most, if not all *432 tbe others, being equally jealous of tbe abuse of power, saw proper to restrict and limit tbe power of tbe State government on tbe same subject. Our people, in tbeir State convention, make this provision: “No man’s particular services shall be demanded, or property taken, or applied to public use, without tbe consent of bis representatives, or without just compensation being made therefor; ” Article I, § 21.
Tbe power to take private property, for “public use,” is here impliedly admitted; and tbe legislature undoubtedly possess it, with tbe limitation prescribed; that is, by making just compensation. This is only in affirmance of tbe great principles of tbe common law. Tbe important, and only question in this case, is, wliat is meant by “just compensation?” How is it to be ascertained; and bow, when, and in what paid? When this is settled upon a fair construction of that instrument, it must prevail, and no act of assembly can change or alter it. All laws are subordinate to this supreme law, and must yield to it, as they are null and void when they come in conflict with it. It follows, therefore, that if tbe legislature attempted in this charter, to substitute .any other compensation for private property taken for this road, or directly, or by indirection, deprived tbe citizen of that “just compensation,” in whole or in part, which is secured in tbe organic law, it has transcended its authority, and trespassed upon sacred ground. If it should be our opinion that this has been done, it becomes an imperious duty, delicate and unpleasant as it may be, to sustain tbe constitution, which we have sworn to support, with a firm band. That must stand, no matter what else may fall. It must be guarded with untiring and sleepless vigilance from all attacks. Upon tbe judi *433 ciary, this important duty devolves. The people can only look to this department of the government for protection, when their constitutional rights are invaded. It should be a pleasant, though delicate duty, to those they have thus entrusted with the power, to exert it on all proper occasions, for their security against wrong.
Then what is the power of the State, and the rights of the citizen, in the question now before us? The former may take the private property of the latter, for public use, as has been done in this case. The citizen has a concomitant right, founded in the constitution to a “just compensation.” Iiow is this right to be asserted? It is certainly the duty of the government to provide some fair and proper mode of ascertaining the value of the property taken, where it cannot be agreed upon, by the parties, and to make provision also, for the payment, when it is ascertained in the mode and manner contemplated by the constitution.
The charter of the defendant was granted in 1845, ch. 1. The twenty-fourth section regulates the mode of ascertaining the damages to individuals, and the manner of compensating them for lands taken for the road. It provides that where the land cannot be' purchased, or the price agreed upon, “the same may be taken at a valuation to be made by five commissioners, or a majority of them, to be appointed by the circuit court of the county where some part of the land, or right of way, is situated,” who shall take an oath “faithfully and impartially to discharge the duty assigned them. In making the said valuation, the said commissioners shall take into consideration, the loss or damage which may occur to the owner or owners, in *434 consequence of land being taken, or tbe right of way surrendered, and also, tbe benefit or advantage be may receive from tbe erection or establishment of the railroad, or work, and shall state particularly the nature and amount of each, and the excess of loss or damage' over and above the benefit and advantage, shall form the measure of valuation of said land or right of way. The proceedings of said commissioners, accompanied with a full description of said land, or right of way, shall be returned under the hands and seals of a majority, “to the court, from which the commission issued, there to remain of record.”
Either party may appeal and have a new valuation by a jury in court, where verdict shall be final, unless a new trial is granted. “And the lands, or right of way, so valued by the commissioners, or jury, shall vest in the said company in fee simple, so soon as the valuation may be paid, or where refused, may be tendered.”
It is further provided, that an appeal is not to stop the work, nor can the same be delayed by injunction, or supersedeas. But in case the appeal is by the company, surety must be given to pay whatever may be awarded in the court.
Here is a full and vigorous exercise of the power of eminent domain. The fee simple title is vested in the corporation. No objection is made, nor do we see any, under the construction that a jury trial, in the regular common law mode, is adopted in case of appeal, to the provision made in this section for settling the rights of the parties. But the contested and embarrassing question, still arises upon the rule prescribed in this law, for ascertaining the “just compensation” to *435 the owner of the land, the nse and title of which he is thus forced to surrender to the corporation. On the one hand in mating the valuation of the land, the “loss or damages” which may accrue to the owner by taking the land,” is to be fixed; on the other, the “ benefit or advantage ” to the owner from the erection of the road, is to be estimated, and the excess of the former over the latter, in the language of the act, “ shall form the measure of the 'oah/aation of said la/ndP
Is this the measure of “ compensation,” prescribed in the constitution?' Was the compensation secured to the owner for the loss of his property to be paid in money, or may it be made in other property, or incidental “benefits and advantages?” Was it intended, that the citizen should not only be forced to give up his land for the common or public use, but to take in payment for it, any thing it might suit the party taking it, to offer? If such be the true meaning of the constitution, it is certainly a poor protection of private rights against the exactions of power, and is only calculated to excite false hopes of security. By the supreme law, the legislature are empowered, where, in their opinion, the good of the whole people requires it, and for the use and benefit of the whole, to compel him who owns property to give it up, upon the payment to him by the same public, for whose use it is taken, a “just compensation,” or, in other words, a fair price, or the value in money, for the property taken.
He cannot be paid off in “benefits and advantages,” which are thus forced upon him, against his consent. He may be compelled to submit to the encroachment upon his private rights, when they come thus in conflict with the public interest, but with the charter of his *436 liberties in his hand, he can say to the powers that be, “thus far shalt thou come and no farther.” In the appropriation of the property, the public power is exhausted. It cannot be allowed to prescribe how much and in what he shall be paid. The value of the thing taken, must be assessed by a just and proper tribunal, and the amount paid, in the lawful coin of the United States — in money. It is a debt against those who take the property, and must be paid like all other debts. The creditor in this case, cannot be coerced to receive as compensation, ameliorations of his remaining property, or the enhancement of its value, nor any other “benefit or advantage,” either real or imaginary, that may be conferred upon him. He may not wish to part with a portion of his land to have the price of that which remains enhanced. The increase of price without any improvement of its fertility or beauty, is no advantage to him, if he does not wish to sell; it only increases his public' burthens in the way of taxation. What others might regard as a great “ advantage and benefit,” he might consider a decided injury. If his lands are appreciated, and his facilities of travel and trade increased by this improvement, these are benefits to which he is entitled, with the community in general, and for which, he has to pay, in common with others, in taxes and other burthens. But there can be no good reason, why any more should be taken from him than others, for these common benefits.
Then we arrive at the conclusion, that the plaintiff is entitled to the value of the land, taken from him by the defendants, in money, and that this value, when ascertained, cannot be liquidated in whole, or in part, by any “benefit or advantage” he may in fact or by supposition, derive from the making of the road, in the *437 appreciation of bis remaining land, or otherwise. But on the other hand, it would be unjust to make the public pay the enhanced price, that would result from the fact that the road had been located at that place.
It is difficult to lay down any very definite rule for the government of commissioners and juries on this subject, which will be of easy practical application in every case. Yet, it is highly important, that some principle be settled, and the extent of its application to peculiar circumstances defined, calculated to produce uniformity, and rid the subject of that vagire and indefinite character which now seems to perplex the minds of those who have to act upon it. We consider the proper rule to be this, that the fair cash value of the land taken for public use, if the owner were willing to sell, and the company desired to buy that particular quantity, at that place and in that form, would be the measure of compensation. It is not in the nature of a wrongful taking, for which damageá are to be assessed. Nor is it a claim for any wrong or damage done, but the appropriation of the property is legal and rightful, as much so as if the owner had voluntarily sold it to the company, áfed the only open question was, what is a fair price for the property? What is its value? Now, from this definition of the nature of the transaction, it will follow, that there can be nothing added to the price on account of the unwillingness of the owner to part with his land, or to have the improvement there, or because he may have to build fences and walls, or be put to inconvenience in getting to his out-buildings, or have them to remove, or such like inconveniences. These things do not enter into a just idea of a just compensation for the property actually taken, but are *438 incidental to it, and are provided for in another form by this charter, as will be presently shown. These considerations are not to enter into the estimate of the jury to enhance the price, but on the other side, the value is not to be reduced by the consideration that the improvement about to be made, will be advantageous to the owner in the amelioration and enhanced value of his remaining land, the increased facility in travel or trade it will afford him, or the location of a depot or town upon his land. To all these, and such other incidental advantages as may result to him, he is entitled, in common with other citizens; and for which, he pays in taxes and other legal burthens imposed by government. If such special advantages accrue to him in consequence of the public improvement and that particular location of the road, it is an incident to his right of property, and a benefit for which no one has a right to make him account, in fixing the price of other property taken against his will. The following circumstances and considerations should enter in this estimate of value or compensation.
1. The quantity of land taken. It would not be reasonable to fix the price of one acre, or the fourth of an acre, at the general rate of the whole tract, or a larger quantity. This would be selling by retail, and ought to be at a higher price, for the quantity taken.
2. The place where the land lies, which is thus appropriated, with reference to external circumstances. Is it in the country, a village, or city? With reference to remaining land, is it taken on the outer line, with the bed of the road only, on the land; or does it run so as to divide the land in a regular, or awkward form ? through a garden? stable lot? or the family yard? between the *439 dwelling bouse and kitchen? or under either of them? and if so, are they of great value ? or of but little value ? Is it so run as to cut off from the main lot, a portion of ground, that for quantity or form is saleable, or not? So, upon this point, the rule must be as first laid down, in general terms; the quantity taken, and place and form in which it is taken, must be looked to in fixing its value.
3. Auy general effect, that the actual or contemplated erection of the rail road, or special effect of the location of it at that particular place, may have upon the value of that land, whether it has been to improve or lessen the price, is not to form an element or be considered in the valuation. If the value is elevated by the work, he should not have the advantage of it, because we do not make him account for the increased value of the remainder of his land; and if the value is reduced by it, he should not suffer, because he is forced to part with his property for that purpose, against his will.
4. The incidental advantages, and disadvantages, benefits and injuries, are to be left entirely out of view. The owner’s unwillingness to sell, or to the location of the road on his land, or near his house, on the one hand; and the necessity the public is under to have the land at that particular place, on the other, are to have no influence on the price. The property is to be valued on the same principles and considerations, as if both parties had agreed upon the sale, and had referred the -single question of the intrinsic value of that particular property, to the commissioners. The consideration for his property, to which the owner is entitled, being thus ascertained, it must be paid to him in money. To compel him to *440 take any tiling else, would render tbe constitutional guarantee, ineffectual and delusive.
Here, tlie constitutional provision ends; its inhibition upon the government goes no farther. The legislature may make any regulations it thinks right and proper for an account, or estimate of incidental “loss or damage,” or injuries to the land owner. These may consist of the necessity created for the building of new fences, the removal of buildings, separating him from his spring, well, mills, negro houses, barns, &c. And against this, may be set off, the “ benefits and advantages ” to the owner, in the enhancement of the value of his remaining land, of the same, or any adjoining tract, his increased facilities of travel, &c. "We think the legislature have the power to do this; and if required by the petitioner, the court would be bound, under this charter, to direct the commissioners, or in case of appeal, the jury, to make the estimate on both sides, upon the basis here stated. But this must be separate and distinct from the valuation of the land, for the purpose of ascertaining the compensation required by the constitution, and cannot be blended with it, or in any way enlarge or reduce it. It is true, that the nature of the items on both sides of this account, would be of a very vague and indefinite character, depending before commissioners, upon their opinions upon the view and examination of the ground, and before a jury, on appeal, upon the opinions and fancy of witnesses. But for that, no remedy or definite rule can be furnished, which will clear the subject of its inherent difficulties. But this enhancement of the price, which may be taken into the account against the petitioner, must be confined in the estimate to the lot, or tract, through which the road runs, or to lots or *441 lands, which adjoin it, and to such improvement in value, as is tbe result of running tbe road at that particular place, and not to tbe general rise of property in tbe country, or that neighborhood, produced by tbe public work. That which is common to all, should not be charged to him, because this is an advantage to which he. is entitled as a citizen and tax payer of the State.
To -these conclusions we are brought, by what seems to us, a fair construction of our own constitution. And we find, that we are fully1 sustained in them, by the court of appeals of the State of Kentucky, in the case of Jacob vs. The City of Louisville, 9 Dana, 114. In that case it is stated, that the same principles had been adopted in Sutton’s heirs vs. The City of Louisville, 5 Dana, 28, and in Rice vs. Nicholasville, Danville and Lancaster Turnpike Company, 7 Dana, 81. The language used in the constitution of Kentucky, is substantially the same as ours on this subject.
¥e are aware that in some of the States, contrary and conflicting views have been entertained on some of the points now decided. . It would be a useless extension of this opinion, to review them, as it could be productive of no advantage. The diversity presented may be partly attributed to the different constitutional provisions on the subject, and to the fact, that some of the State constitutions are entirely without any such provisions. And again, the legislative enactments, and the form in which the questions have been presented to the courts, have been so variant, and dissimilar, that the diversity seems at first view, to be- greater than it really is, upon closer examination.
*442 But, we -are fully satisfied with the construction now given, and though we entertain very great respect for decisions of other States, we cannot yield to them as authority, any farther than they are sustained in our judgment, by sound reason and settled principles.
Eor the errors in law above indicated, in the charge of the court below, we reverse the judgment in this case, and remand the cause for a new trial on the principles laid down in this opinion.