THE STATE OF TENNESSEE, DEPARTMENT OF HIGHWAYS, Charles Speight, Commissioner, Plaintiff-in-Error, v. E. HAZEL JENNINGS, Oteelia J. Adamson and the Metropolitan Government of Nashville, Davidson County, Tennessee, Defendants-in-Error.
—435 S.W.(2d) 481.

Middle Section.   August 30, 1968.

Certiorari Denied by Supreme Court December 12, 1968.

George McCanless, Attorney General, and Taylor & Schlater, Nashville, for plaintiff-in-error.

L. Kenneth Johnson, Nashville, for defendants-in-error.

PURYEAR, J. This is a condemnation case in which the State filed a petition on June 1, 1967, for the purpose of taking the major portion of property consisting of a house and lot located in Davidson County, Tennessee, on the two mile pike near Goodlettsville, which property was owned by the defendants-in-error, E. Hazel Jennings and Oteelia J. Adamson, as tenants in common. The Metropolitan Government of Nashville and Davidson County, Tennessee, was made a party defendant only for the purpose of clearing the property of tax liens.

The property was taken for the purpose of constructing Interstate Highway No. 65 and the order of taking is dated June 16, 1967. Although the entire property of the defendants was not taken, it is conceded that the remaining portion thereof, which was not taken, has little or no value, since it remains inaccessible, except from property of adjoining landowners, and, therefore, the defendants are entitled to the market value of their entire property, consisting of a house and a lot, as just compensation for the taking.

Contemporaneously with filing of such petition the State deposited with the Clerk of the trial Court the sum of $10,020.00.

The defendants, Hazel Jennings and Oteelia J. Adamson excepted to the amount paid into Court by the State and demanded a trial by jury for the purpose of fixing the amount of compensation to be paid to them.

The case was tried by the Honorable Roy A. Miles, Circuit Judge, and a jury on October 17, 1967, as a result of which the trial jury awarded the defendants $20,000.00 as compensation for the taking of their property, this amount being the total awarded for value of land taken and incidental damages to the remaining property.

Within the proper time, the State filed a motion for new trial, which was overruled, from which judgment, overruling its motion for new trial, the State has appealed and assigned errors as follows:

"1. The verdict is contrary to the weight and preponderance of the evidence.

2. The verdict is excessive.

3. The Court erred by admitting into evidence the testimony of the property owners' appraiser, Mr. Fred Dance, relative to commercial sales near the subject residential property as comparable sales, Mr. Dance having admitted that the commercial sales were zoned residential prior to the announcement of the highway and that the enhancement in their value was due solely to the highway and its interchange, for which the subject property was taken.

4. The Court erred in admitting into evidence the expert testimony of Mr. Fred Dance as to the fair market value of the subject property, which was zoned Residential, as his opinion was admittedly based on

commercial value of nearby tracts, the value of which were enhanced solely by the location of the highway and had no reasonable prospect of commercial zoning prior to announcement of the highway.

5. The Court erred in declining to additionally charge the jury, as requested by the Petitioners as follows:

'Petitioner's Special Request No. 1.

'I charge you further, Ladies and Gentlemen of the Jury, the value of land condemned should be fixed as of the date of condemnation proceeding and with reference to the loss the owner sustains, considering the land in its condition and situation at the time it is taken and not as enhanced by the purpose of which it was taken.' "

Upon trial of the case, the defendant, E. Hazel Jennings, testified that the property consisted of a residence containing four rooms and a bath, together with a hallway, with a garage on the rear portion of the lot which was not taken. This witness testified that the value of the entire property was $20,000.00.

The defendant, Oteelia J. Adamson, did not testify but it was stipulated by counsel that if she did so testify, her testimony would be the same as that of her sister, E. Hazel Jennings.

The only other witness who testified in behalf of the defendants was Mr. Fred Dance, an expert witness, engaged in the real estate and appraisal business in Davidson County, Tennessee. The witness testified that, as of the date of taking, total market value of the property taken and incidental damages to the remaining portion was $30,854.00.

Mr. Dance testified that although the property in question here was zoned as residential property, he based his estimate of $30,854.00 upon the fact that it and other nearby property, which had also been zoned "residential", had acquired some commercial value by reason of the fact that it was located between two mile pike and Interstate Highway 65, and, therefore, he placed his valuation upon a commercial basis rather than a residential.

Mr. Dance also testified that in arriving at his estimate of the value of the property in question, he considered comparable sales of nearby property which had been sold for commercial purposes since the Interstate Highway had been planned and the location thereof ascertained.

On this phase of the matter Mr. Dance's testimony is as follows:

"Q. What I'm getting at is this, Mr. Dance: this highway wasn't laid down on commercial property. It was planned out on residential property and after the highway was announced and set, then came along some of the property owners, who were going to be suitably located, and got the property zoned commercial to be used in connection with the highway.

A. Well, you make the prices.

Q. Isn't that what happens?

A. Certainly. That makes desirability; that's what makes business.

Q. Now, is it your position, then, that every time a piece of interstate highway is planned and some property near it is zoned commercial in connection with this use, that every piece of land, in the vicinity that

highway covers then, should have a fair market value for purposes of condemnation at commercial prices?

A. If it's near enough to it. Now, my experience in traveling around over these ramps—off and on ramps—is that that happens for quite a distance.

Q. And it's your opinion, then, for purposes of condemnation, the fair market value of every piece of land taken for the highway near these interchanges—

A. Goes a way up.

Q. —should become commercial value?

A. Yeah.

MR. SCHLATER: That's all.

A. If the owners desire it.'' (B. of E. pp. 42, 43)

\* \* \* \* \* \*

"Q. (By Mr. Schlater) Mr. Dance, prior to the interstate highway being announced and planned out through this area, this was a residential area, was it not?

A. Yes. I think maybe there was one commercial or two commercial items east of it.

Q. Right. But they had been there for years—

A. Been there a long time.

Q. —prior to the zoning of any kind? This area was zoned residential and every lot along there, except one or two possible businesses that had been there for years, were approximately half-acre lots, houses side by side along the road there in this immediate vicinity; is that right, sir?

A. As I remember it, yeah.

Q. Now, after the highway was announced, Mr. Dance, I'm going to ask you if, as it's been the pattern all over the state and all over the country, people rush out to try to buy land near the interchanges, because they know that this is potentially valuable property to oil companies and prospective business or commercial uses?

A. Yeah, that's the general procedure.

Q. And that's just what happened out here, wasn't it?

A. It did happen." (B. of E. pp. 58, 59)

The only witness who testified on behalf of the State was Mr. Floyd Adkisson, Sr., who was engaged in the real estate and appraisal business. The witness testified that, in his opinion, the value of the property taken and incidental damages to the remaining property was $9,950.00 at the time of taking and that his valuation was made upon the basis that the property in question was residential and not commercial property.

Mr. Adkisson did not take into consideration any enhancement in value caused by the construction of the Interstate Highway, which had been anticipated for a few years before the actual taking.

██ We must overrule assignment of error number one, because the verdict of the jury was approved by the trial Judge and this Court cannot weigh the evidence for the purpose of determining whether or not it preponderates in favor of or against the verdict. Rogers v. Murfreesboro Housing Authority, 51 Tenn.App. 163, 365 S.W.2d 441; Jones v. Noel, 30 Tenn.App. 184, 204

S.W.2d 336; Atlantic Ice & Coal Co. v. Cameron, 19 Tenn.App. 675, 94 S.W.2d 72.

■ The remaining four assignments of error are all based generally upon the State's insistence that it was prejudicial error for the trial Court to admit into evidence the testimony of Mr. Dance, which was based upon anticipated enhancement of value by reason of the construction of the very improvement for which the property was taken; that the trial Court refused to instruct the jury that such anticipated enhancement should not be considered in evidence and, therefore, the verdict of the jury was excessive.

We have concluded that it was error for the trial Court to admit into evidence the testimony of Mr. Dance, in which he gave his opinion as to the value of the property, which value included anticipated enhancement due to the improvement for which the property was taken, and having erroneously admitted such evidence, the Court further erred by refusing to instruct the jury not to consider such enhancement.

We have further concluded that the admission of such evidence and refusal of the Court to instruct the jury not to consider it was affirmatively harmful, in view of the size of the verdict.

Although the verdict of the jury was for exactly the amount that the defendants themselves testified was the value of their property, neither of them claimed to possess any special knowledge of real estate values in Davidson County and their estimate of value was apparently based solely upon their experience as owners of the property in question.

No doubt, the jury gave much consideration to the testimony of Mr. Dance, and little, if any consideration, to the testimony of the State's expert witness, Mr. Adkisson.

In the early case of Woodfolk v. Nashville & Chattanooga Railroad Company, 32 Tenn. 422 (1852) our Supreme Court said:

"Then we arrive at the conclusion, that the plaintiff is entitled to the value of the land, taken from him by the defendants, in money, and that this value, when ascertained, cannot be liquidated in whole, or in part, by any 'benefit or advantage' he may in fact or by supposition, derive from the making of the road, in the appreciation of his remaining land, or otherwise. But on the other hand, it would be unjust to make the public pay the enhanced price, that would result from the fact that the road had been located at that place." Woodfolk v. Nashville & Chattanooga Railroad Company, supra, pp. 436, 437

On this question of the consideration of enhancement in value, we find the following in Nichols on Eminent Domain, Vol. 4, pp. 201, 202, 203 and 204:

"It rarely happens that proceedings for the condemnation of land for the public use are instituted without months, years, and, in some instances, decades of time spent in preliminary discussion and in the making of tentative plans. These discussions and plans are usually known to the owners and other persons interested in land in the vicinity of the proposed improvement, and are matters of common talk in the neighborhood. If the projected public work will be injurious to the neighborhood through which it will

pass, the fact that it is hanging like the sword of Damocles over the heads of the land owners in the vicinity cannot but fail to have a depressing effect upon values, and on the other hand, if it is expected that the improvement will be of such a character as to benefit the surrounding land, values usually rise in anticipation of the construction of the improvement. When the taking is finally made, the question arises whether this anticipatory modification of value should be considered in awarding damages.

"The general rule is that any enhancement in value which is brought about in anticipation of and by reason of a proposed improvement is to be excluded in determining the market value of such land, although there is some authority which, contrariwise, unqualifiedly allows recovery for such enhanced value." Nichols on Eminent Domain, Vol. 4, pp. 201, 202 203 and 204

The Woodfolk case supra, is cited by Nichols on Eminent Domain in support of the majority rule. We also find this same rule stated in 27 Am.Jur. (2nd) as follows:

"In anticipation of the construction of a public improvement, the value of lands in the vicinity of the proposed improvement frequently rises before the actual taking is effected by condemnation. As a general thing, under the greatly prevailing view, the owner of land taken in eminent domain is not entitled to recover an increase or enhancement in the value of his land due to the proposed improvement, although there is authority to the contrary. In many cases the right to enhancement has been denied without any attempt to bring out the fact that, or to draw a distinction on the

basis of whether, at the time of the enhancement sought to be recovered, it was practically certain that the land in question would be taken for the project." Vol. 27 Am.Jur. (2nd) Section 283, pp. 79, 80

In support of his insistence that Mr. Dance's opinion as to value of the property was competent, counsel for the defendants cites Memphis Housing Authority v. Ryan, 54 Tenn.App. 557, 393 S.W.2d 3 (1964), but we do not consider that case as applicable here. The distinction between the instant case and Memphis Housing Authority v. Ryan, supra, is pointed up in the following language of the Court:

"The prime objection, as we understand the petitioner, to that which is referred to as the property sold by Lentz to Esso, it is said that it lies along a thoroughfare, is zoned commercial, while the involved property fronts along a narrow street and is zoned residential. This lot was 40 x 150. It sold for $22,500. Exhibits 3 and 4 to Orr's testimony shows the involved property in a photograph, Exhibit 3, and adjoining residence in Exhibit 4. Viewing Exhibit 3 you see the Esso station property, that is, you see its location. If zoning was the only problem to be considered in connection with the property the jury could well relate that particular sale as comparable at the time the Esso property was sold. These photographs show that the involved property, at that time, was located very closely to this area zoned commercial on which the Esso station was erected. Though so zoned the jury could take into consideration that at that time the property involved was not under any restrictions from the Memphis Housing Authority with respect to its use after sale. Though zoned differently, we feel the jury, for comparable pur-

poses, could easily reconcile the difference." Memphis Housing Authority v. Ryan, supra, p. 576, 393 S.W.2d p. 12.

From the foregoing quotation, it will be seen that the question of anticipated enhancement in value resulting from the improvement for which the property was taken was not raised in that case.

Therefore, we overrule assignment of error number one and sustain assignments of error numbered two, three, four and five. The judgment of the trial Court is reversed and the case will be remanded for a new trial consistent with this opinion. Defendants-in-error will pay the costs of this appeal.

Shriver, P. J., and Todd, J., concur.