John Parker **LAYNE** et al., Petitioners,

v.

**C. W. SPEIGHT,** Commissioner of Highways of the State of Tennessee, Respondent.

Supreme Court of Tennessee.

Oct. 14, 1975.

William M. Ables, Jr., South Pittsburg, for petitioners.

R. A. Ashley, Jr., Atty. Gen., Russell G. Lazenby, Jr., Asst. Atty. Gen., Nashville, Francis Barker, South Pittsburg, for respondent.

## OPINION

FONES, Chief Justice.

The issues in this condemnation case spring from the land owner's witnesses' use of comparable sales to oil companies, admittedly enhanced by location on the I–24 in-

terchange at Kimball. The Layne property was taken for the widening of U. S. Highway 72 from First Street in South Pittsburg to the I-24 interchange, a project later in time to the construction of I-24 and the portion of the interchange where the comparables were located, but said by the State to constitute one project and render the comparables inadmissible as tainted with enhancement by the very project for which the subject property was taken.

The trial judge overruled the State's objection to the use of the comparable sales in question and the jury returned a verdict of sixty-two thousand, five hundred ($62,500) dollars as the value of the land taken and no incidental damages to the residue.

The Court of Appeals reversed and remanded for a new trial, holding that (1) whether or not I-24 was an integral part of the public improvement for which this land was taken was a question of fact for the jury under proper instructions from the Court, and (2) the trial judge erred in overruling the State's objection to the testimony of Boyd and Adcock, for the reason that their estimates of value were based solely upon the highest and best use, rather than all available uses. The State had not relied upon either proposition in the trial court or in the Court of Appeals.

Land owners petitioned this Court for the writ of certiorari citing both rulings of the Court of Appeals as error. We granted the writ and have heard oral argument.

## I.

No authority is cited by the Court of Appeals in support of the conclusion that the scope of the project issue is a question for the jury.

The question posed by the State on the preliminary motion was the admissibility of comparable sales of similar properties to major oil companies, on the ground that such sales were tainted by enhancement in value from the same project for which the Layne property was being taken.

It is well settled in this State that the admission of comparable sales in an eminent domain case rests largely in the discretion of the trial court. All of the numerous factors that weigh upon the issue of admissibility of comparable sales are considered and passed upon by the trial judge, as a preliminary matter. See *Lewisburg & N. R. Co. v. Hinds,* 134 Tenn. 293, 183 S.W. 985 (1916); *Memphis Housing Authority v. Ryan,* 54 Tenn.App. 557, 393 S.W.2d 3 (1965); *Maryville Housing Authority v. Ramsey,* 484 S.W.2d 73 (Tenn.App.1972); *Memphis Housing Authority v. Newton,* 484 S.W.2d 896 (Tenn.App.1972); *Memphis Housing Authority v. Peabody Garage Company,* 505 S.W.2d 719 (Tenn.1974).

In *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970), the issue of whether the scope of the project question is to be determined by the trial judge or by the jury was squarely presented. The court concluded that the matter could be decided either way without doing violence to Rule 71A(h) Federal Rules of Civil Procedure. But, the court concluded it is for the judge to tell the jury the criteria it must follow in determining what amounts will constitute just compensation and that in order to do so he must decide the scope of the project issue as a preliminary matter. Although we have not adopted Rule 71 of the Federal Rules of Civil Procedure, the holding in *Reynolds* is in harmony with the cases heretofore cited, and the practice in Tennessee.

The Court of Appeals was in error in holding that the scope of the project issue, which determined the admissibility of comparable sales, was for jury determination.

## II.

At the beginning of the trial, out of the presence of the jury, trial counsel for the State made the following motion:

"___at this time as a preliminary matter for the State of Tennessee I'd like to make a qualitive [sic] motion. This is a motion to exclude the testimony of the

landowner's witnesses that sales to major oil companies and others near Interstate 24 interchange are comparable sales, if such witnesses testify that in their opinion enhancement of value for those parcels and to the land in this lawsuit was influenced by Interstate 24 interchange construction. As U. S. 72 widening and I–24 construction were so intergradiently associated as to constitute one project, and any such enhancement in value to defendant's land was due to the various public improvements for which it was taken." B.E. at 5, 6

In support of the motion counsel cited *State Department of Highways v. Jennings,* 58 Tenn.App. 594, 435 S.W.2d 481 (1968), and *State For The Use Of The Highway Department v. Craner et al.,* unpublished opinion of the Court of Appeals, Middle Section, released May 15, 1974, for the proposition that if the value of the land has been depreciated or enhanced by the anticipation of the very public improvement for which it is taken, then such depreciation or enhancement may not be considered in fixing such values, and the compensation to the owner for the taking of his land must be fixed as though the particular public improvement had never been conceived, planned, announced or begun.

■ *State v. Jennings, supra,* correctly states the rule that the land owner is not entitled to enhancement resulting from the public improvement for which his land is taken. The scope of the project question presented in this case was not an issue in *Jennings* or in *State v. Craner, supra,* although these were two projects, it was conceded that they were separate and distinct. Our research fails to reveal a Tennessee case providing guidelines for determining whether the taking is for an extension of the existing project or for some other public purpose.

■ We adopt the Federal Rule articulated in *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943):

"if a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to do it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities." 317 U.S. at 376, 377, 63 S.Ct. at 281

■ In *United States v. Reynolds, supra,* the court was asked to clarify the scope of the project test. However, the Court merely restated the crux of the rule of *Miller* that if the lands were probably within the scope of the project from the time the government was committed to it, no enhancement in value attributable to the project is to be considered in awarding compensation. Mr. Justice Stewart, writing for the Court, added the following:

". . . As with any test that deals in probabilities, its application to any particular set of facts requires discriminating judgment. The rule does not require a showing that the land ultimately taken was actually specified in the original plans for the project. It need only be shown that during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use." 397 U.S. at 21, 90 S.Ct. at 807, 808

In further support of the preliminary motion the State called Clarence S. Harmon as a witness. He had retired on January 1, 1973, as Director of Research and Planning for the State Highway Department. He testified that he had worked with the planning of I–24 which was "established" in 1958. He related that there were a number of revisions made in the I–24 plan and that he did work on some of the planning but not all of it; that he worked on all of the planning for the connector route, that is the widening of U. S. 72.

Harmon said the plans for I–24 and the interchange in question were completed in 1963 and right-of-way acquisition started. He testified that I–24 was open for traffic in that area in 1965 or 1966.

With respect to the widening of U. S. 72, he testified that he had looked through his records and he did not have a record, "___that it was in this plan like this prior to 1964___". He produced a brochure based upon 1964 planning, that described a tentative five (5) year schedule for the State Highway system. The period involved was January 11, 1965, through June 30, 1970. Therein, the right-of-way taking for the widening of U. S. 72 was programmed for the period July 1, 1968, through June 30, 1969. The actual date of taking of the Layne property was October 30, 1970.

At one point in his testimony Harmon said, "___we had 72 all the time, the interchange was built and consequently it became necessary and we considered it in our planning to improve the access from South Pittsburgh to the interstate in order to avoid the congestion."

■ The burden of proof is upon the State to show that the taking of the Layne property was "probably within the scope of the project from the time the government was committed to it." The State's proof shows that the plans for I–24 at this interchange were complete in 1963 and right-of-way acquisition was underway. We think the State was committed to that project at that time. The planning for the widening of U. S. 72 appears to have followed in 1964, when "it became necessary" to improve the access and avoid congestion between South Pittsburgh and the interstate.

At one point in his testimony, Harmon gave "a little history" wherein it appears that a state-wide survey was made at the request of the Highway Department, by the Automotive Safety Foundation to recommend "which road should be built first___and this was one of the ones that was selected at that time." The study was made at some time in the years 1955–1957, but in our opinion, that testimony is too vague to have any probative value on the question of whether the widening of U. S. 72 in the late 1960's was within the scope of the I–24 project when the State was committed to it no later than 1963.

The opinion of the Court of Appeals treats the State's witness, William Hester, as corroborating the testimony of Mr. Harmon that, as stated by the Court of Appeals, "the construction of Interstate 24 and the widening of U. S. Highway 72 were both being planned at the same time and constituted one project." We are unable to find anything in the testimony of Mr. Hester to that effect, and the State did not rely upon Mr. Hester's testimony in presenting its preliminary motion and has not relied upon his testimony in the briefs filed in the Court of Appeals or this Court.

■ While the issue is close, we cannot say that the evidence preponderates against

the finding of the trial judge that the State failed to carry the burden of proving the U. S. 72 project was within the scope of the I–24 project. It follows that he correctly overruled the State's motion to exclude sales to major oil companies near the I–24 interchange as comparable sales.

### III.

The Court of Appeals held the entire testimony of Boyd and Adcock, the land owner's expert witnesses as to value, to be inadmissible upon the unassigned ground that an analysis of their testimony revealed that they considered only the highest and best use rather than all available uses.

We have quoted in full the objection of the State to the admissibility of comparable sales to oil companies, made at the beginning of the trial, before any testimony was adduced. We have carefully examined the record and find only two renewals of that objection during the course of the trial, both clearly predicated on enhancement in value from their I–24 interchange location. At the conclusion of the testimony of Mr. Harmon (page 20, bill of exceptions), the following appears:

MR. BARKER: Your Honor, I'm not going to take up a lot more time on this. I think it's been covered, and I'd like to renew that motion that evidence of these enhanced sales be excluded because this witness has shown that they are so inter-related they could be considered one.

At page thirty-seven (37) of the bill of exceptions the following appears, during the direct examination of the witness Boyd:

A. Well, first of all I looked at sales on I–24 Interchanges___

MR. BARKER: (Interposing) Excuse me Mr. Boyd.

Your Honor, I'd like to renew an objection that I made earlier for the record on proof of comparable sales of the witness for the reasons that I set out in the absence of the jury.

We are aligned with the majority of states in holding that just compensation must be measured by the fair market value of the land in view of its value for all available uses as distinguished from its value for the best use. See *Davidson County Board of Education v. First National Bank Trustee*, 202 Tenn. 9, 301 S.W.2d 905 (1957). Relying upon that rule, the Court of Appeals analyzed the testimony of Boyd and Adcock and concluded that their testimony had been based entirely upon the best use and that the trial judge had erred in overruling the State's motion, to "___exclude the testimony of the witnesses, Boyd and Adcock."

The State's motion was clearly limited to testimony of comparable sales to oil companies, if enhancement "was influenced by Interstate 24 interchange construction." That motion was overruled at the conclusion of Mr. Harmon's testimony. In the abundance of precaution the State's objection was renewed during Mr. Boyd's testimony. Incompetency of the testimony of Boyd and Adcock upon the ground that their valuation testimony was not based upon all available uses was not articulated at any time during the trial and is clearly not embraced in the objection made and overruled.

In *Middle Tennessee Railroad Company v. McMillan*, 134 Tenn. 490, 184 S.W. 20 (1916), the trial judge sustained an objection upon the grounds of hearsay and excluded certain testimony from the jury. The Court of Civil Appeals did not rule on the validity of the hearsay objection but held the evidence inadmissible on other grounds. The Supreme Court, noting that the ruling of the trial judge on the hearsay objection was clearly erroneous, held as follows:

" . . . Incompetency not objected to is waived. *Any other rule would result in* setting a trap for the other side of the controversy. When objection is made to evidence, and specified, this notification may enable opposing counsel to obviate it, and thus make the evidence compe-

tent, but, if the party making an erroneous objection should be allowed to withhold a good objection and make that in the appellate court, where there can be no possibility of avoiding the difficulty by other evidence, this would give a very great advantage to the party so withholding his real objection, and result in corresponding disadvantage and injustice to the opposing litigant." 134 Tenn. at 507, 508, 184 S.W. at 24

The rule in Illinois is in accord with *McMillan* : "A party objecting to the introduction of evidence must specify the particular ground for the objection in all instances where the objection, if pointed out, might be corrected by the adverse party." *People ex rel. Blackmon v. Berent,* 97 Ill. App.2d 438, 240 N.E.2d 255, 257 (1968), citing *People v. Merrill,* 76 Ill.App.2d 82, 221 N.E.2d 145 (1966). See also: *Kroger Grocery & Baking Co. et al. v. Harpole,* 175 Miss. 227, 166 So. 335, 340 (1936); *State v. Dietz,* 115 N.W.2d 1 (N.D.1962); *Heyverests v. State,* 202 Ind. 359, 174 N.E. 710 (1931); 88 C.J.S. Trial § 125b; Wharton's Criminal Law and Procedure, § 2047.

The reason for the rule is particularly applicable in this case. While we entertain considerable doubt that the Court of Appeals has correctly analyzed the testimony of Boyd and Adcock, assuming that it was defective pursuant to one of the several caveats quoted by Mr. Justice Burnett in *Davidson County v. First National Bank Trustee, supra,* it is clear that the objection could have been met by the land owner in the trial court either through the witnesses Boyd and Adcock themselves or otherwise. This kind of trap in the trial of a lawsuit is contrary to traditional notions of fair play and substantial justice.

The Court of Appeals is reversed and the trial court is affirmed. The costs in the cause are adjudged against the State of Tennessee.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.