STATE of Tennessee, Plaintiff-Appellant,

v.

### Bill S. HODGES and wife Joanna, Defendants-Appellees.

Court of Appeals of Tennessee,
Eastern Section.

March 11, 1977.

Certiorari Denied by Supreme Court
May 31, 1977.

Brooks McLemore, Jr., Atty. Gen., Nashville, Earl S. Ailor, Sp. Counsel, Knoxville, for plaintiff-appellant.

Hailey, Waters, Jarvis & Sykes, Sevierville, for defendants-appellees.

## OPINION

GODDARD, Judge.

In this condemnation proceeding the State of Tennessee, Plaintiff-Appellant, appeals a non-jury judgment rendered by the Circuit Court for Sevier County against it in favor of Bill S. Hodges and wife Joanna, Defendants-Appellees. Although there are four assignments of error, only one question is presented: "Were the landowners entitled to be paid the value of their property as enhanced by the improvement made in connection with a prior condemnation proceeding?"

The facts of the case are undisputed. On the 21st day of December 1971, the State filed a petition to condemn some 57 acres of the Defendants' property in connection with the construction of the interchange of Interstate 40 and State Route 66. The landowners were left with tracts of land located at each quadrant of the interchange. The original plans contemplated the relocation of Dumplin Valley Road, a portion of which was embraced within the 57 acres condemned. Although the record is not clear, we surmise that at least two lanes of Interstate 40 were completed when it was discovered that sufficient land was not acquired to permit a stable slope in connection with the relocation of Dumplin Valley Road, and that it would be necessary to acquire from the Defendants an additional 1.75 acres in the southwest quadrant. To accomplish this purpose the State initiated the present proceedings on the 4th day of March 1974.

Prior to the commencement of this proceeding the Defendants had entered into an option agreement with third parties, where-

by 3.9 acres, the remaining acreage owned by the Defendants in this quadrant, would be sold for the sum of $150,000. This option was orally exercised by the optionees, but when they received information that the State would need additional property they withdrew from the transaction and the sale was never consummated.

The Trial Court, in applying the rule of *U. S. v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), adopted as the Tennessee rule by *Layne v. Speight*, 529 S.W.2d 209 (Tenn.1975), was of the opinion that under the foregoing state of facts the State was required to pay the Defendants the enhanced value of the property by reason of the construction of the interchange, and rendered judgment in the sum of $110,000 for the land condemned and $50,000 for incidental damages.

*Miller*, which is relied upon by both parties, involved the construction of Sacramento River Dam which necessitated relocation of some 30 miles of railroad. The Supreme Court of the United States, in finding the landowners were not entitled to enhanced value, laid down the following rule (63 S.Ct. 281):

> If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities.

In *Speight*, which, as noted, adopted the rule of *Miller*, the Court was called upon to determine whether a suit seeking condemnation in connection with the improvement of U.S. Highway 72 was within the scope of the Interstate 24 project. The Supreme Court held that the evidence did not preponderate against the trial judge's findings that the state had failed to carry the burden of proving that the property sought to be condemned was "probably within the scope of the project from the time the Government was committed to it."

It is undoubtedly true, as insisted by the State, that the width of the roads—Interstate 40, State Route 66 and Dumplin Valley—was not increased and that this proceeding was necessitated by relocating Dumplin Valley Road in accordance with the plans of the original project. It is likewise equally true, as insisted by the Defendants, that the State contemplated acquiring no additional land at the time the first condemnation proceeding was filed.

We should have thought that we would have been able to find at least one case where the factual situation was identical—additional land required because of inadvertence in drawing the original plan; however, our research has proved fruitless. We do believe however that the facts in *Cole v. Boston Edison Company*, 338 Mass. 661, 157 N.E.2d 209 (1959), most nearly parallel those found in the case at bar. In that case the Commonwealth of Massachusetts had acquired property in connection with a

turnpike and subsequently it became necessary for the Boston Edison Company to acquire an easement from the same landowners for the purpose of relocating its power lines. The Supreme Court of Massachusetts adopted the *Miller* rule and then determined that because the turnpike made it likely that the power lines would have to be relocated the landowner was not entitled to enhanced value even though the second condemnation was by the power company and the first by the Commonwealth.

Additionally, we note that in *U. S. v. Reynolds*, 397 U.S. 14, 21, 90 S.Ct. 803, 807, 25 L.Ed.2d 12 (1970), which *Speight* also quotes with approval, the Supreme Court of the United States again addressed the *Miller* rule, saying:

> Finally, the Government asks us to take this occasion to "clarify" the "scope-of-the-project" test. We think the test was stated with admirable clarity by a unanimous Court in *Miller*: If the "lands were probably within the scope of the project from the time the Government was committed to it," no enhancement in value attributable to the project is to be considered in awarding compensation. As with any test that deals in probabilities, its application to any particular set of facts requires discriminating judgment. *The rule does not require a showing that the land ultimately taken was actually specified in the original plans for the project. It need only be shown that during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use.* (Emphasis supplied.)

We accordingly conclude in light of *Reynolds* and under the particular facts of this case, where the original improvement contemplated relocation of a road which later necessitated acquisition of additional property and where the project had not been fully completed, that the enhanced value of the property because of the improvement may not be considered.

We are not unmindful that the landowners had optioned the property to third parties for a substantial consideration, and that the sale was not consummated because of the State's action. In this regard we are of the opinion that the landowners are entitled to be reimbursed for reasonable expenses incurred in connection with the proposed sale.

In conclusion, we note that to adopt the rule insisted upon by the landowners would tend to encourage the State, when acquiring property, either to obtain more land than it really felt would be necessary rather than run the risk of having to acquire additional property at an enhanced value or, conversely, if the improvement were a detriment to the surrounding property, to acquire property piecemeal and thereby, in the subsequent proceedings, pay the landowner on the basis of its reduced value.

For all of the foregoing reasons we sustain the assignments of error, remand the case for trial in the Circuit Court for a determination of (1) the value of the property taken and incidental damages, if any, to Defendants' remaining property as of the 29th day of March 1974, the date of taking, unenhanced by its proximity to the improvement, and (2) the reasonable expenses incurred by Defendants in connection with the aborted sale. The costs of appeal are adjudged to the Defendants.

PARROTT, P. J. (E. S.), and SANDERS, J., concur.