249 So.2d 804

**STANDARD OIL COMPANY, a Corporation**

**v.**

**STATE of Alabama.**

**6 Div. 767.**

Supreme Court of Alabama.

June 30, 1971.

Macbeth Wagnon, Jr., Birmingham, for appellant.

**144**

R. B. Jones, Birmingham, for appellee.

BLOODWORTH, Justice.

The landowner (Standard Oil Company) is appealing from a final judgment of condemnation entered by the circuit court of Jefferson County.

This condemnation proceeding was instituted by the State of Alabama to condemn access rights from a parcel of land to interstate highway I–65 in Birmingham. The State filed its application for condemnation in the probate court of Jefferson County which assessed damages of $50,000 in favor of Standard Oil. On appeal by the State to the circuit court, the trial court excluded a part of the evidence relating to the landowner's damages and gave the general affirmative charge for the State. The jury returned a verdict of no damages. The sole issue in the trial court was the question of damages, the right of the State to condemn being admitted.

For a better understanding of the facts, reference is made to the following map introduced in evidence at the trial.

26TH. AVENU

BASEBALL
FIELD

22 ND. AVE. NO.

20 TH. AVE. NO.

19 TH. TER.

19 TH. CT.

TH. AVE. NO.

PL.

[168Z]

It is undisputed that Standard Oil purchased the tract (shown as the shaded area on the map) for a service station site on April 17, 1967 for $79,000. It will be noted that the tract is located on the west side of 18th Street immediately opposite an exit ramp for south bound traffic from I-65. I-65 runs generally north and south at this point. To the south of the property approximately a block away is an entrance ramp onto I-65 for south bound traffic. At the time of Standard Oil's purchase of the land, the plans for the I-65 project did not include the taking of any access rights to Standard Oil's property. The plans and drawings for the project showed that part of the I-65 right-of-way to the west of the ramp was to be fenced on the east side of 18th Street, so that 18th Street was open for traffic off the ramp directly to the property. A portion of 18th Street would be used for the ramp and is to be one-way going south. It would appear from the evidence that in January 1968, plans for I-65 were modified due to a change in safety standards made by the Bureau of Public Roads, necessitating the acquisition of the access rights to Standard Oil's land fronting 18th Street at the exit ramp. The new plans called for the erection of a fence on the west side of 18th Street along all but the North 50 feet of Standard Oil's property so that direct access to it from the ramp and I-65 is cut-off. The denial of these access rights would require a circuitous route to reach the property from the I-65 ramp opposite it.

During the trial in the circuit court, expert witnesses for the State testified to the "before" value of this property without taking into consideration the construction of I-65. All but one of these witnesses testified that the construction of I-65 and the denial of the access rights had not diminished the value of the tract. One witness did testify there was damage by the taking of the access rights but he offered no testimony as to the amount of damage. All of the State's witnesses agreed that its highest and best use is for multiple family dwellings.

Over objections by the State, the trial court admitted testimony offered by Standard Oil to show the "before" value of the tract taking into consideration the construction of I-65 and with access from the ramp. These witnesses testified its highest and best use to be for a service station. Standard Oil contended that the purchase price paid by it reflected the value of the property due to its favorable location on 18th Street and 24th Avenue and the ease and directness of access to the property from the I-65 ramp.

The State contended that Standard Oil Company paid an enhanced price for the property, and was speculating on a favorable location on the interstate highway. Furthermore, the State insisted that Standard Oil bought the property before the project was fully planned, and that the State should not have to pay for enhancement in value due to the construction of the interstate highway.

At the conclusion of the trial, the court granted the State's motion to exclude all of the testimony offered by Standard Oil relating to any enhancement in value of the property by virtue of the project. It also gave the general affirmative charge with hypothesis for the State, viz:

"I charge you ladies and gentlemen of the jury that if you believe the evidence in this case you cannot award damages to the property owner in this case."

Complying with this instruction, the jury returned a verdict for the State, finding no damages, and the trial court entered its judgment accordingly.

■ Before considering the propriety of these rulings by the trial court, we must first dispose of the State's claim that Standard Oil has failed to file a motion for new trial which, it argues, is necessary in order for Standard Oil to present its assignments of error for review.

This court has recognized in a series of recent decisions in condemnation cases that,

"\* \* \* when the appellant appeals from a judgment of condemnation, and the only question tried is the amount of the award, the appellant cannot have review of any ruling on the giving or refusing of requested charges to the jury, or in admitting or excluding evidence, unless appellant shall assign for error and argue the overruling of appellant's motion for new trial on the ground that the verdict was excessive or inadequate." State v. Graf, 280 Ala. 71, 189 So.2d 912 (1966).

See also Mobile Housing Board v. Brook, 285 Ala. 244, 231 So.2d 115 (1970); State v. Jefferson County Board of Education, 282 Ala. 303, 211 So.2d 146 (1968); State v. Davis, 282 Ala. 438, 212 So.2d 686 (1968); State v. Young, 281 Ala. 349, 202 So.2d 714 (1967); State v. East Woodland Hills, Inc., 281 Ala. 430, 203 So.2d 447 (1967); State v. Dunlap, 279 Ala. 418, 186 So.2d 132 (1966); State v. Jackson, 279 Ala. 425, 186 So.2d 139 (1966); State v. Young, 279 Ala. 426, 186 So.2d 140 (1966); State v. LeCroy, 279 Ala. 428, 186 So.2d 142 (1966); State v. Peinhardt, 270 Ala. 627, 120 So.2d 728 (1960).

On first impression, it would appear that this rule might be applicable to the case before us. However, an examination of the reason for the rule convinces us that it has no application to this case. Undoubtedly, the primary reason for requiring an appellant to file a motion for new trial and assign as grounds the excessiveness or inadequacy of the verdict, is to allow the trial judge an opportunity to pass upon the jury's findings with respect to the excessiveness or inadequacy of damages. Where, however, the trial court has excluded from the jury's consideration any award of damages and has charged them that if they believe the evidence they cannot award damages, we can see no justifiable reason to require a motion for new trial on the ground of inadequacy of the verdict. The trial court having already passed upon the question of the extent of damages, it would be superfluous to present the judge with a "second opportunity" by way of motion for new trial to consider the same question.

This reasoning is reflected in a recent decision by this court in Porter v. Alabama Farm Bureau Mutual Cas. Ins. Co., 279 Ala. 499, 187 So.2d 254 (1966). In that case, in discussing the necessity for a motion for new trial in certain instances, it was observed:

"It is true that a motion for new trial is required in Alabama in order to present certain matters for review. For example, on appeal from a judgment on a jury verdict, 'In the absence of a motion for a new trial this Court will not pass on the weight of the evidence. Orman v. Scharnagel, 210 Ala. 381, 98 So. 123. \* \* \*' Aldridge v. Seaborn, 253 Ala. 603, 46 So.2d 424. It is apparent, however, that such a motion for new trial is necessary in order to obtain, for the first time, a ruling, by the trial court, on the weight of the evidence. It seems that the purpose of the motion is not to afford the trial court a second opportunity to rule on the same question, but to obtain a ruling by the trial court on the weight of the evidence. The jury has already judged the weight of the evidence, but the trial court has not ruled on the weight of the evidence. In the absence of a ruling by the trial court, there is no ruling of which the appellant may complain. The motion for new trial is necessary to obtain such a ruling."

These remarks reinforce our conclusion that there is no good reason to require a new trial motion to be filed in this case.

To summarize, we recognize the existence, validity, and applicability of the rule stated in State v. Graf, supra. However, we do not consider that it has application to the case before us for the reasons we

**148**

have given. Thus, we hold that Standard Oil's failure to file a motion for new trial containing grounds as to the inadequacy of the verdict, to assign its overruling as error, and to argue the overruling of the motion on the ground that the verdict was inadequate, does not preclude our review of the trial court's rulings.

■ We turn next to a review of the trial court's action in excluding portions of Standard Oil's evidence relating to the "before" value of its property and in granting the general affirmative charge with hypothesis for the State.

There is no dispute between the parties with respect to the applicable law; the controversy arises over the efforts of each to apply the law to the facts at hand.[1] Both the State and Standard Oil cite and rely upon United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162 (1943), to sustain their respective positions. In that case the United States Supreme Court set forth the principles to be applied in determining whether the enhancement in the market value of a tract of land, occasioned by virtue of its proximity to the improvement to be constructed, is to be considered in awarding compensation. (See also Nichols on Eminent Domain, Vol. 4, § 12.3151[2], [3].)

In its opinion, the United States Supreme Court made the following observations:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement."

Having laid this foundation, the Supreme Court pronounced the following test:

"The question then is *whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it.* If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities." [Emphasis supplied]

To assuage any doubt as to the current validity of the test set forth in *Miller,* the United States Supreme Court recently reaffirmed the soundness of this holding in United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). There, the court noted:

"Finally, the Government asks us to take this occasion to 'clarify' the 'scope-of-the-project' test. We think the test was stated with admirable clarity by a

---

1. We note that this case was tried in the circuit court, argued and submitted here, with only a passing reference to our recent cases of Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117 (1958); and St. Clair County v. Bukacek, 272 Ala. 323, 131 So.2d 683 (1961). In view of this, and the result the court reaches in this case, their applicability here, if any, need not be considered.

unanimous Court in *Miller*: if the 'lands were probably within the scope of the project from the time the Government was committed to it,' no enhancement in value attributable to the project is to be considered in awarding compensation."

Applying that test to the case before us the question is whether the taking of the access rights to Standard Oil's property was "probably within the scope of the project from the time the Government was committed to it." In excluding the evidence presented by Standard Oil as to the "before" value of its property and in giving the general affirmative charge with hypothesis for the State, the trial judge himself resolved this question and made a determination that the taking was probably within the scope of the project.

After examining carefully all of the testimony presented, we have concluded that the trial court was in error in making this determination. Under the facts of this case, it is our judgment that the question as to whether the acquisition of these access rights was probably within the scope of the project is a factual issue which should have been resolved by the jury under proper instructions from the court.[2]

Since our decision requires a retrial of the case, we are reluctant to state, in much detail, those facts which present a question for the jury's determination. Nevertheless, it is essential, for a proper understanding of our conclusion, to recount certain relevant portions of the evidence. The testimony relating to this issue leaves much to be desired, particularly those portions leading up to the point when the decision was made to acquire the access rights to Standard Oil's land.

As best we understand the facts from a reading and study of the transcript, the following constitutes the sequence of events. The right-of-way maps encompassing that portion of the interstate project where Standard Oil's property is located were completed in 1962. Although preliminary in nature, these maps distinctly showed that the access rights to the property (subsequently purchased by Standard Oil in 1967) would not be taken. Acquisition of the necessary parcels of land to construct the highway in the vicinity of the Standard Oil's property was begun, and the majority of the tracts were acquired, in 1965 and 1966. There was still no indication that Standard Oil's access rights would be acquired. Before purchasing the property, Standard Oil and its representatives made several inquiries, directed to the State Highway Department engineers, to ascertain whether there were any future plans by the department which would affect this tract of land. Although these engineers pointed out that highway maps were always subject to change and that minor changes were frequently made (not requiring Bureau of Public Roads approval), they indicated that there were no plans at that time which would require condemnation of any portion of this property. On April 17, 1967, Standard Oil purchased this tract. Later that same year, however, new safety requirements were issued by the Bureau of Public Roads necessitating certain changes in interstate highway design, thereby resulting in the need to secure the access rights to I–65 from Standard Oil's land. This change required approval from the Bureau of Public Roads.

We think it is apparent from this brief recital of the evidence that the question as to whether the taking of Standard Oil's ac-

2. In the federal courts there was formerly a split of authority on the issue as to whether the "scope-of-the-project" question was to be determined by the judge or the jury. United States v. Reynolds, supra, settled this question in favor of the judge but for the reason that, except for the single issue of damages, the federal rules provide that the trial judge is to decide all issues, legal and factual, which may be presented. The United States Supreme Court (in *Reynolds*) added that historically there was no constitutional right to jury trial in the federal courts in condemnation cases. In view of these reasons, it would appear to have no application to Alabama practice.

cess rights was "probably within the scope of the project at the time the government was committed to it" should have been submitted to the jury for its determination under appropriate instructions from the trial judge. In excluding Standard Oil's evidence and in failing to submit this issue to the jury, the trial court committed reversible error.

Reversed and remanded.

. HEFLIN, C. J., and SIMPSON and McCALL, JJ., concur.

COLEMAN, J., concurs in the result.