**STATE of Tennessee, Plaintiff-Appellant,**

v.

**Bessie Louise PARKES et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Jan. 31, 1977.

Certiorari Denied by Supreme Court June 20, 1977.

Robert J. Ames, Asst. Atty. Gen., George W. Franklin, Nashville, for plaintiff-appellant.

Boston & Weatherford, Lawrenceburg, for defendants-appellees.

## OPINION

DROWOTA, Judge.

This is an appeal by the State of Tennessee from the jury verdict and judgment in an eminent domain proceeding, in which defendant landowners were awarded $450.00 for the property taken and $11,200.00 in incidental damages. The State objects to certain testimony introduced at trial by defendants, and asserts that the verdict is not supported by admissible evidence.

On November 4, 1974, the Department of Transportation of the State of Tennessee filed a petition for condemnation in the Circuit Court of Lawrence County. The petition prayed for condemnation of a triangular piece of land located at the southeast corner of a lot which is located at the northwest corner of the intersection of Military Street and Gaines Street in the City of Lawrenceburg. The total area of the property taken is 121 square feet. After notice was served on the several defendants, who are all holders of interests in Parkes Motor Company, which owned the property, an order condemning the property was entered on January 6, 1975. Defendants answered, protesting as inadequate the $415.00 compensation figure set by the State and requesting a jury trial. The trial, held November 25, 1975, resulted in a verdict and judgment awarding defendants a total of $11,650.00. The State has appealed.

At trial, the State first showed that the project for which the property was taken involved widening the street by rounding off the corner, as well as constructing curbing along a large part of defendants' property on each of the two streets. Two entrance ramps were to be provided to defendants' lot. The lot contained a gas station, abandoned at the time of the taking, in this corner portion, as well as two other

buildings located farther back from the corner.

James F. Parkes, president of Parkes Motor Co., Inc., and one of the defendants, after noting that the company had conveyed the lot in question since the condemnation date, testified that the best use of the property would be for commercial development, such as an office or bank building. Parkes valued the piece of land taken at $423.50. He then discussed incidental damages to the remainder of the lot, basing his estimate on two elements. First, he noted that if a building were placed on the property after the taking, it would have to be either set in about eight feet from the street on each side or built with a diagonal or other irregularly shaped front in order to avoid encroaching on the corner taken by the State. If a diagonal front were built, the area lost to the building would mean a loss in the rent-producing potential of the property and a corresponding depreciation of its value, estimated at $12,000.00 by Parkes. Parkes then discussed the added cost of constructing a building with a diagonal front on the lot, estimating it at $3,500.00. Thus, Parkes's testimony was that the taking caused $15,500.00 in incidental damages, which, when added to his figure of $423.50 for value of the land taken, would produce a total award of $15,923.50. He concluded that the property's original value of $70,300.00 had been reduced by this figure as a result of the taking.

Terry Evans, a real estate broker and appraiser, then testified for defendants. He also thought the best use of the property was as "commercial rental property" in the form of a building of some kind. He valued the property in question, as of the date of taking, at $56,734.00. Due to the necessity of erecting either a square building set in from the street or a building with a diagonal front, he assessed the value of the property remaining after the taking at $42,570.00 for a total loss of $14,164.00, which included $500.00 as value of the land taken. Evans said he used loss of rental value in arriving at his valuation figures.

The State's valuation evidence consisted of the testimony of Norman Hall, a real estate appraiser who had appraised the property in March of 1974 and updated his appraisal to the time of the taking. He put the value of the property taken at $450.00, and explained that his figure was based an on examination of comparable sales in the area. The only possible damage to the remaining land found by Hall was the expense of relocating the gas pumps and "redesigning the site so it could be put back in operation as a service station if so desired," which he fixed at $11,200.00. The State then concluded with the testimony of W. S. McCrary, an Exxon marketing representative, who explained that the State had paid Exxon $8,400.00 to remove the service station's gasoline pumps, which belonged to Exxon, from the property and to repave the ground from which the pumps were removed.

Since the dispute in this case does not involve the $450.00 value placed by the jury on the land taken, our discussion will relate only to incidental damages.

Tennessee Code Annotated § 23–1414 provides for award of incidental damages in eminent domain proceedings. These damages include "those relating to the part of the land remaining to a landowner after a part of his land has been taken," as well as the expenses he incurs in moving his property, for which the statute expressly provides. *Knoxville Housing Authority, Inc. v. Bush,* 56 Tenn.App. 464, 470, 408 S.W.2d 407, 410 (1966). Just as fair market value is the standard for measuring the value of property actually taken and for fixing compensation therefor, decline in fair market value is the test of compensation for damage to land remaining after a partial taking. *City of Memphis v. Hood,* 208 Tenn. 319, 345 S.W.2d 887 (1961). In applying the fair market value standard in general, the jury should consider all uses to which the property might reasonably be put as of the time of the taking. *McKinney v. City of Nashville,* 102 Tenn. 131, 52 S.W. 781 (1899); *Alloway v. City of Nashville,* 88 Tenn. 510, 13 S.W. 123 (1890).

**508**

Although all uses of the property should be considered in such a case, we agree with the State that many uses for which a landowner might contend are "speculative" and "potential" as to his particular property, and that he should not be permitted to present evidence that strays to a consideration of such unlikely contingencies. See L. Orgel, Valuation Under the Law of Eminent Domain (2nd ed. 1953), § 31. But we do not agree that the testimony of Parkes and Evans in the case at bar was "speculative" in this sense simply because it discussed the possible use of defendants' property for construction of a building for commercial rental purposes. The type of testimony to be avoided is that which discusses uses that are unfeasible or remote in likelihood or in time, given the circumstances and location of the property. In this case, the record shows that the property is located at a busy intersection which contains businesses built out to the street on other corners. There was no evidence to show that a commercial building on defendants' property was unfeasible for any reason, such as an overabundance of similar uses in the community. The testimony of Parkes and Evans itself was limited to discussion of a one or two story building, which would be not at all unreasonable at the present time in the area in question. We are thus unable to find that the trial judge was in error in overruling the State's objection to this testimony as speculative.

A related objection to the testimony of Parkes and Evans concerns the rule that a witness in an eminent domain proceeding will not be allowed to state the value of the property for a specific purpose. See *Davidson County Board of Education v. First American National Bank,* 202 Tenn. 9, 301 S.W.2d 905 (1957); *Alloway v. City of Nashville,* 88 Tenn. 510, 13 S.W. 123 (1890); *Memphis Housing Authority v. Mid-South Title Co.,* 59 Tenn.App. 654, 443 S.W.2d 492 (1968). This rule, a corollary of the requirement that all uses be considered in determining value, originally was used to protect against an overemphasis on the use for which the property was being taken, and to prevent the jury from valuing it in terms of

its particular importance to the *condemnor. Alloway,* supra; see L. Orgel, Valuation Under the Law of Eminent Domain (2d ed. 1953), § 30, at 149. In *Davidson County,* supra, however, the rule was applied to uphold exclusion of a map, prepared by the landowners for use in the eminent domain proceeding, which detailed an imaginary plan for subdividing the property taken. Similarly, in *Memphis Housing Authority,* supra, it was held error to admit plans which were introduced by the owners of the taken property and which graphically depicted placement of a nine story motel on it. These cases, while stating broadly that testimony of value for a single particular purpose is inadmissible, clearly demonstrate that the concern underlying this rule is to prevent overemphasis of any single use of the property, and especially that overemphasis which results from depicting excessive details of a possible use. A broad prohibition against description and valuation of a particular use, however, may conflict with the widely acknowledged privilege of the witness to explain how he arrived at his value for the property, if he has taken the peculiarities of one particular use into account in making his estimate. Obviously, a balance must be struck. Since the major concern of the *Davidson County* rule is to prevent overemphasis of a particular use and its value, its effect must be to require excluding evidence of a particular use when it reaches the point of being an unreasonable emphasis on that use and not merely an explanation of the witness's valuation processes. The testimony of Parkes and Evans did not reach that point in the instant case. They discussed their opinions that the property remaining to defendants had suffered a decrease in value in terms of the lessening of the property's desirability for commercial rental, a perfectly reasonable use. Their testimony did not include plans or maps of any particular possible project, nor did it contain oral descriptions of any such project. In short, their discussion of the problems of constructing a commercial building on the property that remained after the taking was neither outside

the bounds of reasonableness as an explanation of their expert valuation testimony nor an undue overemphasis on value for a particular use, and did not run afoul of *Davidson County.* We are thus unable to find error on this ground in the trial court's admission of this testimony.

The State places great emphasis on defendants' having sold the property in question since the date of condemnation, arguing that it renders defendants' testimony concerning erection of a commercial building entirely speculative because *defendants* are no longer able to carry out such a project. This argument misses the point. The issue in this case is the fair market value of the property, and various possible uses and their feasibility come into play not in regard to what benefit *defendants* might derive from them, but in regard to their effect on the property's value in general. Defendants, as owners of the property on the condemnation date, are the parties entitled to compensation for the taking (see *Federal Land Bank v. Monroe County,* 165 Tenn. 364, 54 S.W.2d 716 [1932]); if there was a diminution in value, we must assume that the loss was passed on to defendants in the sale of the property in the form of a lower purchase price. That defendants no longer own the property is irrelevant to the valuation problems presented by this case.

A further objection to the testimony of Parkes and Evans concerns their use of rental value in assessing the value of defendants' property. While it is clear that fair market value is the value to be determined by the jury in fixing compensation in an eminent domain case, it is also true that there is no absolute prohibition against admitting evidence of rental value, at least where it is presented and interpreted by an expert as a criterion in his assessment of the property's fair market value. *Union Railway Co. v. Hunton,* 114 Tenn. 609, 88 S.W. 182 (1905); *State v. Southerland,* (Judge Todd), Tenn.App., Middle Section, March, 1976. Parkes and Evans are both experienced in appraising real estate. While rental value figured prominently in

their discussion of the property's worth, it does not appear that they used it as the sole test of value rather than as a guide to the property's worth in the market. It follows that this objection to their testimony is also without merit.

Even if the admission of the testimony of Parkes and Evans were error, we would be compelled to find it harmless, for it is clear that the jury adopted none of it. The verdict was $450.00 for the land taken and $11,200.00 in incidental damages, and these figures are identical to those mentioned by the State's own expert witness, Norman Hall.

The testimony of Hall and that of another State witness, W. S. McCrary, present the final point to be considered on this appeal. Hall's testimony was that $11,200.00 would be the total cost of relocating the gasoline pumps on defendants' property and of other reworking necessary after the taking to enable the property to go back into operation as a service station. McCrary, a marketing representative for Exxon, which owned the gasoline pumps that were on the property at the time of condemnation, testified that the State had paid Exxon $8,400.00 for the expenses of removing its pumps from the property and paving over the damage done by the removal. It would appear as though the removal of the pumps and the attendant repair for which the State has already paid $8,400.00 would also accomplish part of the job of reworking the property for use as a service station, the total cost of which would be the $11,200.00 figure found by the jury as incidental damages. It is not clear, however, to what extent these two jobs and their costs overlap, or how much more money would be required to restore the property to suitability for a service station once Exxon has completed the work for which it has been paid. Since this line of testimony was entirely the State's, it was up to the State to clarify it by explaining the relationship of these two elements of cost to one another. In the absence of such clarification, the State cannot possibly have cause for complaint in the jury's selection as incidental

damages of an amount to which its own witness testified.

To conclude, we find that the testimony of Parkes and Evans was not improperly admitted, and that any error in its admission would have been harmless in any case. The jury, having heard the conflicting contentions of both sides as to the property's uses and value, was properly instructed and returned a verdict firmly grounded on the evidence. Since all evidence was properly admitted and since the verdict is supported by the evidence, both of the State's assignments of error must be overruled and the judgment below affirmed.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.