786 S.W.2d 944 (1989)
STATE of Tennessee, on Relation of the COMMISSIONER, DEPARTMENT OF TRANSPORTATION, for and on Behalf of Said Department, Petitioner-Appellant,
v.
Margaret VEGLIO, A Resident of Shelby County, Tennessee; and Riley C. Garner, Trustee for Shelby County, Tennessee, Defendants-Appellees.
Court of Appeals of Tennessee, Western Section, at Jackson.
August 16, 1989.
Permission to Appeal Denied January 2, 1990.
*945 Charles W. Burson, Atty. Gen. and Reporter, Larry M. Teague, Asst. Atty. Gen., James W. Thompson, Asst. Atty. Gen., Nashville, for petitioner-appellant.
William H. Fisher, III, Valerie Futris, Memphis, for defendants-appellees.
Permission to Appeal Denied by Supreme Court January 2, 1990.
HIGHERS, Judge.
The State of Tennessee has appealed a $1.8 million verdict and judgment in the Circuit Court at Shelby County in favor of the defendant, Margaret Veglio, in this condemnation action.
On December 15, 1986, the State filed a petition of condemnation, paying estimated damages of $87,500 into the court. On December 18, the trial court entered an order granting the State possession of 3.493 acres of a 19.065 acre tract owned by Veglio and disbursing the funds to her. Veglio answered and sought compensation for damages resulting from the condemnation.
The property at issue is located in northeast Shelby County in the Cordova community, near the intersection of Interstate 40 (I-40) and Germantown Road. (See attached diagram). Veglio's father acquired the property in 1955 as part of a farm, and it had been given to her by her mother in 1971. Veglio resides there with her family. Prior to the condemnation, Veglio's property had 464 feet of frontage on Germantown Road. The road had been elevated in 1963 to pass over I-40, and Veglio's property lay eight to twenty feet below the elevated road with a driveway rising to intersect with and provide access to the road. Commercial development in the area mandated improved rights of way. Therefore, Germantown *946 Road was being upgraded from a two-lane to a four-lane road with a median, and the Germantown Road/I-40 interchange was being upgraded from a half-diamond (providing access only from eastbound I-40 and only to westbound I-40) to a full-diamond (providing access both to and from both eastbound and westbound I-40). To achieve these improvements, the State found it necessary to take a portion of the Veglio property.
All of Veglio's Germantown Road frontage was taken leaving Veglio's frontage along an access road aptly named "Frontage Road." Germantown Road was further elevated because of a new bridge over the interstate, and as described by defendant's counsel, the ramps, the access road and Germantown Road itself, "tower" above defendant's property "like three great walls of China separated by twin grand canyons." Further, according to defendant's counsel, the erection of chain-link fences, combined with the "huge mountains of earth," result in the property resembling a "Himalayan prison camp."
The jury rendered a verdict in favor of Veglio, awarding her $857,000 as compensation for the 3.493 acres, $722,000 as compensation for the loss of access to Germantown Road, and $22,664 in incidental damages to the remainder of the property involved, for a total of $1,799,664. Motions by the State for a new trial and alternatively for remittitur were overruled, and this appeal followed. The State has raised a number of issues, but basically these may be addressed in four groups: (1) scope of the project issues, (2) appraisal issues, (3) access rights issues, and (4) admissibility issues regarding photographs. We will address the issues in this order.
First, the State asserts that the interchange upgrade was necessitated by and was a part of the widening of Germantown Road, i.e., there was a single project, the widening of Germantown Road, of which the interchange upgrade was a part. The value of property taken through condemnation for purposes of public improvement must be ascertained without considering any enhancement or depreciation which occurred before the taking in anticipation of the improvement. State v. Urban Estates, Inc., 225 Tenn. 193, 201, 465 S.W.2d 357, 360 (1971).
The scope of the project issue affected the trial in three ways. As a preliminary matter, the trial court ruled that the two improvements were distinct. Therefore, the trial court held (1) that evidence of real estate transactions reflecting values enhanced by the widening of Germantown Road were not governed by Memphis Housing Authority v. Newton, 484 S.W.2d 896, 897-8 (Tenn. App. 1972), which excludes evidence of values enhanced by project anticipation; (2) that evidence relating to the history of the development of Germantown Road, relevant only to a determination of the scope of the project already determined by the trial court, was excludable under Layne v. Speight, 529 S.W.2d 209, 211 (Tenn. 1975); and further, (3) the court instructed the jury that Veglio was entitled to the benefit of any enhancement in value due to the widening of Germantown Road but not due to the construction of the interchange in accordance with Urban Estates, supra. The State asserts that the trial court erred as to the rulings and the jury instruction.
The admissibility of comparable sales in eminent domain cases is largely a discretionary matter for the trial court, and the factors which weigh upon that issue must be considered by the trial court as preliminary matters. Layne, 529 S.W.2d at 211. Tennessee has adopted the rule that scope of the project issues are among those factors that are to be determined prior to the admissibility of evidence relating to comparable sales. Id. The State does not disagree, but asserts that the evidence preponderates against the trial judge's ruling that the two projects were distinct. We have carefully reviewed the evidence before the judge and disagree with the State's assertion. That portion of the Veglio property needed for the widening *947 of Germantown Road was acquired by Shelby County in 1971. The plan pursuant to which Shelby County acquired the property did not involve the upgrade of the interchange. That plan was developed in the early 1960's as part of a comprehensive plan for Shelby County roads. The plans in regard to this section of Germantown Road were completed in 1969 and the property purchased in 1971.
I-40 at Germantown Road was completed in 1963. Plans to upgrade were not approved until 1977. In 1981 a public hearing regarding the upgrade was held, but there was no discussion of the widening of Germantown Road. An environmental impact study required for the interchange upgrade did not include consideration of the widening of the road, and even specifically states the two projects are separate. Germantown Road remained a county road until 1983 when it was acquired by the State.
After acquisition by the State, 1984 environmental impact studies of the road widening did not include the interchange upgrade, and again indicated the two projects were separate. Finally, the widening of Germantown Road is not scheduled for completion until September of 1989. The interchange upgrade was scheduled for September 1988 completion. We therefore find that the evidence does not preponderate against the trial judge's ruling. Comparable sales reflecting enhanced values due to widening of Germantown Road were admissible.
The State asserts next that even if the evidence did not preponderate against the trial court's ruling as to the scope of the project as to the admissibility of comparable sales evidence, the rule in Layne should be limited to the admissibility question, and that as to the ultimate issue of just compensation, scope of the project questions are factual issues for the jury. Therefore, they assert that the evidence of the history of the development should have been presented to the jury. Although the State cites no Tennessee authorities, it does cite two cases from Alabama, Standard Oil Co. v. State of Alabama, 287 Ala. 143, 249 So.2d 804 (1971); Mobile County v. Brantley, 507 So.2d 483 (Ala. 1987); and one from Alaska, State v. Alaska Continental Development Corp., 630 P.2d 977 (Alaska 1980). We do not find these authorities persuasive. Alabama has not adopted the Tennessee rule, set forth in Layne, recognizing a preliminary question in determining admissibility of comparable sales. The Alabama rule is apparently that evidence of comparable sales is admissible in all circumstances, with the jury then being instructed to ignore or consider it based on whether they determined the taking was within the scope of the project which enhanced the property values. The Alaska case was a non-jury trial and did not address the issue raised by the State.
The State asks this Court to find that the question is one for the trial court in ruling on the admissibility of evidence of comparable sales but one for the jury in determining compensation. The internal inconsistency of this argument is patent. If the trial court ruled that one project was within the scope of the other and therefore excluded all comparable sales evidence, it would be impossible for the jury to award a just compensation if the jury determined the projects were distinct and the owner entitled to enhanced value from one of the two. For better or worse, the rule in Tennessee is set forth in Layne, and scope of project questions are preliminary questions for the court for all purposes. That being the case, the trial court committed no error instructing the jury, based on its determination that the projects were distinct, that Veglio was entitled to value as enhanced by the widening of Germantown Road but not as to the upgrade of the interchange.
Second, the State asserts that the trial court erred in admitting the appraisal testimony of Jeffrey Mann, an expert witness for Veglio. The State also asserts that the trial court erred in allowing Veglio to cross examine the State's appraisal experts concerning appraisal of adjacent property. We preface analysis of appraisal *948 issues by noting that the trial court is allowed wide discretion in condemnation cases in ruling on matters related to expert testimony. State, ex rel. Moulton v. Blake, 49 Tenn. App. 624, 357 S.W.2d 836 (1962). See generally Ayers v. Rutherford Hospital, Inc., 689 S.W.2d 155, 162 (Tenn. App. 1984). The question then becomes whether this wide discretion was abused.
As to the testimony of Jeffrey Mann, the State asserts that the hypothetical in his testimony assumed facts concerning possible uses, zoning, filling, grading, and utility access not in existence at the time of the taking and that his testimony was therefore inadmissible. We find no error in the testimony of Mann in regard to hypothetical uses. Present zoning is not dispositive because zoning changes to reflect the changing needs and circumstances of the community. See Shelby County v. Mid-South Title Co., Inc., 615 S.W.2d 677, 680 (Tenn. App. 1980). There was ample evidence of commercial development in the area to justify the court in allowing consideration of zoning changes from agriculture to commercial. Likewise, filling and grading of property to facilitate particular uses are common, and testimony regarding such is allowable at the discretion of the trial court and is subject to cross examination. Neither was it error to allow Mann to testify regarding what could have been done with the Germantown Road frontage of the Veglio property had it not been taken for the interchange upgrade. All of the possibilities presented were sufficiently supported by the record for the trial court to allow discussion of the hypothetical presented and we find no abuse of discretion. See Cortrim Manufacturing Co. v. Smith, 570 S.W.2d 854 (Tenn. 1978).
The State asserts that even if the hypothetical was sufficiently supported by the evidence, it overemphasized the use on which it was based in violation of Love v. Smith, 566 S.W.2d 876 (Tenn. 1978). Love contains a basic statement of the rule which is analyzed thoroughly in State v. Parkes, 557 S.W.2d 504, 508 (Tenn. App. 1977). We do not feel that the testimony of Mann violated the rule set forth in Love and Parkes. Prohibitions against overemphasis of a particular use were designed to prevent the jury from valuing the property in terms of its particular importance to the condemnor. Parkes, 557 S.W.2d at 508. The rule has evolved to prohibit excessive detail and has been used to exclude imaginary subdivision plans, Davidson County Board of Education v. First American National Bank, 202 Tenn. 9, 301 S.W.2d 905 (1957), and detailed plans of a nine-story motel, Memphis Housing Authority v. Mid-South Title Co., 59 Tenn. App. 654, 443 S.W.2d 492 (1968). But this does not mean descriptions of particular uses are prohibited, and a witness will be allowed to explain the basis of his valuation even when based on a particular use, so long as his testimony does not unreasonably emphasize that use. Parkes, 557 S.W.2d at 508. The determination of reasonable emphasis is one for the trial court, and we find no error rising to the level of abuse of the wide discretion in the trial court's determination that Mann's testimony was properly explanative of the value he assigned the property and not based on an unreasonable emphasis of hotel use.
The State next contends that the trial court erred in allowing Veglio to cross examine its appraisal experts regarding valuations of adjacent properties after issuing a pre-trial order sustaining the State's objection to evidence of adjacent property value. However, that order precludes Veglio's witnesses, not the State's, from testifying as to adjacent property values. The authority upon which that objection was based, State v. Harvey, 680 S.W.2d 792 (Tenn. App. 1984), stands only for the proposition that the trial court has wide discretion relating to admission of adjacent property appraisal testimony. In the case at bar, where one of State's appraisers valued the adjacent property at five times the value he gave the Veglio property, and the other appraiser, at fifteen times the value *949 he gave the Veglio property, the matter was properly the subject of cross examination, and the ability or inability of the appraiser to explain the discrepancy in values assigned adjacent properties is relevant to a jury's consideration of damages for condemnation. See United States ex rel TVA v. 12.3 Acres of Land, More or Less, 229 F.2d 587 (6th Cir.1956).
Third, the State asserts that the trial court erred in denying a motion for directed verdict on the issue of taking of access rights of defendant. The motion was made at the close of Veglio's proof. We find no error in this regard by the trial court. The testimony of John Palmer, an appraisal expert testifying for Veglio, raised sufficient material factual disputes as to the taking of access rights and damages therefrom to deny any motions for a directed verdict. The State failed to renew that motion at the end of all the proof, and any error then remaining, if any, was thereby waived. Searle v. Bryant, 713 S.W.2d 62, 66 (Tenn. 1986).
The State then asserts that jury instructions regarding access rights were erroneous because they were, according to the State, not supported by the record. Although the State asserts that Palmer's testimony was nullified on cross examination, we disagree and find the requisite support therein. The State offered no countervailing proof to Palmer's access rights valuations.
We are cited to Tennessee Farmers Mutual Insurance Co. v. Hinson, 651 S.W.2d 235, 239 (Tenn. App. 1983) in which this Court affirmed the trial court's refusal to give instructions not supported by the facts, but that case does not stand for the proposition that instructions not supported by the record require reversal on appeal. In Bass v. Barksdale, 671 S.W.2d 476, 490 (Tenn. App. 1984), instructions which were not supported by the facts but which were correct statements of the law were held harmlessly erroneous and not ground for reversal. See Noland v. Freeman, 53 Tenn. App. 644, 385 S.W.2d 310, 313 (1964). Even if the instructions were not supported by the record, the present case falls under the rule there stated.
The final issue raised by the State concerns the admissibility of photographic evidence depicting the site prior to completion of the construction. The State asserts that the state of devastation due to incompletion prejudiced the jurors, but on oral argument, the State made clear that evidence of the aesthetics of the completed project was presented by both sides. We thus find that these photos were a matter of weight for the jury and fall within the category of errors referred to by the State at oral argument as "certain errors that we have brought up that in and of themselves would be harmless."
Finding no reversible errors in the trial court's judgment, we affirm the verdict and the judgment of the trial court based thereon. Costs of the appeal are taxed to the State.
TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.
*950