# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 7, 2013 Session

## STATE OF TENNESSEE, ON RELATION OF THE COMMISSIONER OF TRANSPORTATION v. E. G. MEEK, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-128-02       Harold Wimberly, Judge**

---

**No. E2012-01177-COA-R3-CV - Filed December 13, 2013**

---

This appeal arises from a condemnation action. The State of Tennessee ("the State") acquired real property owned by E. G. Meek ("Meek")[1] and Shirley T. Meek. The acquisition of the property is not at issue. Rather, the dispute is over the amount of money Meek is entitled to receive from the State. This case was tried before a jury in the Circuit Court for Knox County ("the Trial Court"). Meek and the State's expert witness testified. The jury reached, and the Trial Court approved, a verdict for $15,250. Meek had sought considerably more money at trial for his property than the $15,250 awarded by the jury. On appeal, Meek alleges numerous errors, such as that the Trial Court erroneously allowed certain evidence to be admitted and that the Trial Judge failed to properly exercise his responsibility as thirteenth juror. Finding no reversible error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

E. G. Meek and Shirley T. Meek, pro se appellants.

Robert E. Cooper, Jr., Attorney General and Reporter; and, Cynthia L. Paduch, Senior Counsel, for the appellee, State of Tennessee.

---

[1]Although both Mr. Meek and Shirley T. Meek are parties in this action, Mr. Meek has been the primary active participant in this case. Accordingly, for convenience and in keeping with how this case has been argued, we will refer to Mr. Meek ("Meek") to represent the defendants/appellants.

# OPINION

## Background

In March 2002, the State filed a petition to condemn a portion of Meek's property located on East Emory Road in Knox County. The State deposited $30,550 for the property. An order of possession was entered in April 2002. No objection was made. Meek's property fronted East Emory Road in Knoxville. Meek's property contained .326 acre before the State acquired a 2,409 square foot strip (approximately .056 acre) from the property's frontage. Slope and construction easements were acquired. A .27 acre remainder with driveway access to East Emory Road remained untaken. Within the acquisition was a 625 square foot building.

We next recount some of the pertinent procedural background of this decade-long controversy. Meek filed an answer to the condemnation petition in June 2002. Meek withdrew the $30,550 deposit in May 2003. Meek was not satisfied with the amount of money, $30,550, the State offered him for his property. Trial tentatively was anticipated for December 2006. In December 2006, the State added William M. Sanders and Beatrice L. Sanders to its petition. Mr. and Mrs. Sanders had purchased the property in November 2004 for $25,000. In a December 2006 letter, the State advised Meek's then attorney that the State's proof at trial as to the property's value would be approximately $15,000 less than the $30,550 deposited. The State was willing to settle for the deposit if Meek paid Sanders $3,000. This attempt at settlement proved inconclusive, and negotiations continued.[2]

The State requested that trial be set for June 2010. Meek obtained new counsel in May 2010. The State represented in another letter to Meek's then attorney that its proof at trial as to the property's value would be some $15,000 less than the deposited amount. Meek's counsel subsequently withdrew, and Meek proceeded pro se. The State sent Meek a letter providing directions to the office of the State's counsel and asking him to call if he had any questions. The case proceeded to a pretrial conference. The Trial Court entered an order concerning the pretrial conference which contained various provisions, including that "[t]here shall be no reference to, testimony of, or any evidence related to compensation which is based upon an alleged loss of income stream to Defendants as a result of the State's acquisition in this matter as same is improper under eminent domain law."

---

[2]A default judgment later was entered against Mr. and Mrs. Sanders.

This case was tried before a jury in August 2011. The first witness to testify was the State's engineer, Debbie Morgan. Ms. Morgan testified to the State's plans for Emory Road, and the relation of this to the Meek property.

Meek testified. We reproduce certain key portions of Meek's testimony:

The property was in a state of remodeling. And all of the pictures show that that property was in a state of remodeling, which would not constitute a piece of property that was in poor condition. It had not been completed, it was still underway, as all the pictures will show.

Income-producing property is supposed to be appraised as income-producing property. This is a business property, per se, producing income, and there was a total amount of money of fifty-one hundred dollars a year being collected on the rental income of this property, in addition to repairs being made by Mr. McBride [the tenant].

The simplest and easiest and most accurate way to provide an income is through an approach of direct capitalization. And what that means to you is that an investor who owned income-producing property has a certain yield, or capitalization rate, that returns to him based upon the range of investments and the problem that he is willing to endure, in other words, the risk that he will anticipate. I am going to use for the purpose of clarity, and also comparable to another issue which will come up in cross-examination, a 7.5 percent capitalization rate.

In doing a direct calculation, it is not even necessary to go and look at the property. You are not gauging the value of the property based upon the asset itself, but only on the income that it is producing. Taking into consideration the taxes and insurance, if you will round that to $400.00 - - which is actual, I went back and checked the records - - if you will take that fifty-one hundred dollars and you will subtract $400.00, that says my income is $4,700.00 a year. Now, I want a seven and a half percent yield on my money. And in order for you to compute that yourself, to see where I am going, if you will take the $4,700.00 and divide that by 7.5, you will have the value based upon an investment, a return of 7.5 percent. If you do that, the very least dollar and cent under all circumstances that the income that it is producing for the investor, the figure which you came up with should be $62,667.00, if my math is correct.

How much is that lot worth can only be said by one thing, is a sales comparison approach. The sales comparison approach is go look at lots in the area, in the neighborhood, and this type, and see what they are worth. I think if you will go back to 2002, as is on the appraisal, that you will find that lots in that area, there is a nice subdivision across the street, lots in that are were demanding somewhere from thirty to, say twenty to thirty-five thousand dollars, I think would be a reasonable amount. Now, this property doesn't have that unless there is a special use benefit, because it can't be built on.

Meek later acknowledged that he had testified in his deposition that the value of the entire property was $38,000 at the lowest and $40,000 to $45,000 at the highest.

Next to testify was Donald White ("White"), a licensed general certified appraiser and the State's expert witness. White earned the M.A.I. designation in 1986 following his completing a number of courses and exams. White had appraised real estate since 1970, and appraised the property at issue in this case. White testified as to the worth of Meek's property at the time of the State's possession in 2002. Using the income approach, White determined that the entire property was worth $31,600. White determined that the State's acquisition was worth $15,250. White based this figure on the following: $3,300 for the 2,409 square foot acquisition; $276 for the slope easement; $264 for the construction easement; and, $11,400 for the contributing value of the improvements. White testified that he initially thought there would be damages to the remainder of the property, but as the remainder ended up having driveway access to East Emory Road, there were no incidental damages to the remainder of the property. White testified to his methodology:

Q:      Mr. White, let me interrupt you for one moment. I was trying to get - - first, initially, what are the three approaches when you are valuing property?

A:      Okay.

Q:      And then you can get into the approach that you actually used?

A:      Okay. One of the approaches is the cost approach. The cost approach involves two or three steps. The first step is to estimate the market value of the site. Then you estimate the cost new of the improvements. From the cost new of the improvements, you deduct accrued depreciation. That would be physical condition, functional obsolescence and locational obsolescence.

Those are the type things that affect the value of property. If a house is 50 years old but it has been really well maintained and it has always received that tender loving care, it will look like it is 40, and so we would use an effective age of 40. If it is 50 years old and it has been beat up and abused and needs paint, windows broken out, windows boarded up, it will have an older effective age. And that is the basis for the accrued depreciation.

We then estimate the value of other site improvements, such as in this case was a fence and a gravel driveway. Those are the things that really we felt had some compensable interest. And we took the cost new and deducted the accrued depreciation and came up with a cost, you know, as is, cost of the improvements. To that, we added the site value, to come up with a number, and then we rounded that number, and that was the basis for a cost approach valuation.

Q:      In regards to Mr. and Mrs. Meek's property, was the cost approach a reliable approach, in your opinion?

A:      No.

Q:      But you actually did go through the steps, just to see what it would be?

A:      I did.

Q:      All right. So then what is the next approach to valuing property? You have told us about one.

A:      All right. The next one is the sales comparison approach. Some people call it the market approach. But what you try to do is identify sales of improved properties as similar to the property you are appraising. Ideally, you want a property that is right next door to your property that sold last week and they have the identical information, identical sizes and conditions and such. That is the ideal situation. But we don't get an ideal situation in this business, and we have to consider, you know, is there anything around that was similar enough to this property, based on willing buyer/willing seller, to use to compare this property. And in this case, we could not identify any.

Q:      So that would leave the third approach, which is that?

A:      The income approach.

Q: And is that the approach that you used in valuing the property?

A: It is.

Meek cross-examined White extensively. In particular, Meek disputed White's use of a 13% capitalization rate. In his closing argument, Meek stated that he felt his property was worth $93,727.00. The jury returned a verdict for $15,250.

Meek, at this point again represented by counsel, filed a motion for new trial. The State filed a response. The motion was heard in April 2012, after which the Trial Court entered an order denying Meek's motion for new trial. The Trial Court stated, in part: "The Court, acting in its capacity as a 13th juror, finds that the preponderance of the evidence supports the $15,250.00 verdict which the Court hereby approves." Meek, once again proceeding pro se, timely filed an appeal to this Court.

**Discussion**

Meek raises several issues on appeal. The State consolidated Meek's arguments into four issues, as Meek acknowledged in his reply brief. We further restate these four issues, which we believe to be dispositive of Meek's appeal, as follows: 1) whether the Trial Court erred in allowing the testimony of the State's expert witness; 2) whether the Trial Court erred in allowing photographs of Meek's property into the record; 3) whether material evidence supported the verdict and whether the Trial Court properly exercised its role as thirteenth juror in approving the verdict; and, 4) whether other alleged miscellaneous defects constituted reversible error.

Before addressing the specific issues, we look to the law relevant to the issues on appeal in this case tried to a jury. As our Supreme Court has instructed:

An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, we shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). "Appellate courts shall neither reweigh

the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009).

"The appellate court affords the trial court wide discretion regarding the admissibility of evidence and will not overturn the trial court's determination absent an abuse of that discretion." *Goodale v. Langenberg*, 243 S.W.3d 575, 587 (Tenn. Ct. App. 2007). Regarding expert testimony in condemnation cases, this Court has stated:

In condemnation cases, a trial court is allowed wide discretion when ruling on matters related to expert testimony. *State Dep't of Transp. v. Veglio*, 786 S.W.2d 944, 947-48 (Tenn. Ct. App. 1989). This discretion extends to expert testimony on the value of condemned land, but "an expert witness is not disqualified to testify merely because he may have used some criteria in arriving at his opinion which is not altogether the standard among appraisers." *State ex rel. Dep't of Transp. v. Brevard*, 545 S.W.2d 431, 436 (Tenn. Ct. App. 1976). Because the trial court has such wide discretion in this area, we review the trial court's decision on the admissibility of an expert's valuation testimony under an abuse of discretion standard. *Veglio*, 786 S.W.2d at 948.

*Eller Media Co. v. City of Memphis*, No. W2007-02751-COA-R3-CV, 2008 WL 5330431, at *3 (Tenn. Ct. App. Dec. 22, 2008), *no appl. perm. appeal filed*.

Our Supreme Court has discussed the abuse of discretion standard:

Abuse of discretion is found " 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.' " *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. See *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Henry*, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.' " *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012).

Tenn. R. Evid. 401 provides:

> **Rule 401. Definition of "relevant evidence."** – "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Tenn. R. Evid. 401.

We now address whether the Trial Court erred in allowing the testimony of the State's expert witness. Meek takes issue with White's testimony on a number of fronts. Meek argues, for instance, that White did not adhere to the standards required by the Uniform Standard Professional Appraiser's Practice. Meek, however, cross-examined White and presented his own alternate opinion and argument to the jury. Clearly, Meek's view and opinion of the property's value clashed with White's. The trier of fact was entitled to view these competing opinions and arguments and choose a value based upon a range supported by the evidence. The mere fact that White's testimony proved prejudicial to Meek's case does not render his testimony invalid, or its admission an error. Generally speaking, most all evidence presented by one side at trial is, at least, intended to be prejudicial to the other side. The Trial Court had wide discretion in admitting testimony, including testimony unfavorable to Meek. There is no hint that the Trial Court abused its discretion in allowing White to testify, and we find Meek's arguments to the contrary to be unpersuasive.

We next address whether the Trial Court erred in allowing photographs of Meek's property into the record. Meek argues that the photographs were unduly prejudicial to his case because they presented his property in a poor state and thus damaged his case. We first note, as did the State, that it is not unreasonable that images of the property at issue would be admitted in a condemnation case. Moreover, the photographs had a distinct purpose as they pertained to establishing why the cost approach was not utilized by White in this case. This had a relevant nexus with White's determination of the property's value. Again, the Trial Court had discretion in the admission of this evidence. There is nothing in this record supporting Meek's position that the Trial Court abused its discretion or committed any other reversible error in allowing these photographs into evidence.

We next address whether material evidence supported the verdict and whether the Trial Judge properly exercised his role as thirteenth juror in approving the verdict. The Trial Judge heard Meek's motion for new trial, and entered an order wherein it affirmed the verdict in his role as thirteenth juror. It is clear from the record that the Trial Judge

independently weighed the evidence and determined that the jury's verdict was supported by a preponderance of the evidence. Having done so, the Trial Judge approved the verdict. *See Dickey v. McCord,* 63 S.W.3d 714, 718-19 (Tenn. Ct. App. 2001). We affirm the Trial Court as to this issue.

Our review in this jury case necessarily is quite limited. We must ascertain whether material evidence supports the jury's verdict. From our careful review of the record, we find that material evidence exists to support the jury's verdict. The State's expert, White, testified to a value for the acquisition of $15,250, and explained his reasoning. Meek presented his testimony, opinion, and arguments for a considerably higher value. It is not our role to reweigh the evidence on appeal. The record on appeal contains material evidence in support of the jury's verdict which was within the reasonable range of valuations presented at trial.

Finally, we address whether other alleged miscellaneous defects constituted reversible error. Among other things, Meek asserts that the State did not cooperate with him ahead of trial. In particular, Meek asserts that he was surprised by the State's proof of $15,250 for the value of the acquisition. However, Meek had been put on notice for years that the State intended to put on proof at trial of a value considerably below the amount, $30,550, originally deposited by the State. From our careful review of the record, there is no support for Meek's position that he was prevented from preparing for trial, calling witnesses, or introducing evidence as required for his case. In *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222 (Tenn. Ct. App. 2000), this Court observed that:

> *Pro se* litigants are entitled to fair and equal treatment. *See Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983). *Pro se* litigants are not, however, entitled to shift the burden of litigating their case to the courts. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983). *Pro se* litigants are not excused from complying with the same substantive and procedural requirements that other represented parties must adhere to. *See Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).

*Whitaker*, 32 S.W.3d at 227.

Meek now may wish that he had taken different tactical approaches or other actions both before and during the trial, but this does not mean that he was denied a fair trial. Meek was not entitled to have the burden of litigating his case shifted to the Trial Court, and the Trial Court did not err by declining to undertake this burden. We affirm the Trial Court in all respects.

**Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellants, E. G. Meek and Shirley T. Meek, and their surety, if any.


_____
D. MICHAEL SWINEY, JUDGE